**UNITED STATES CELLULAR CORPORATION, Appellee,**

v.

**BOARD OF ADJUSTMENT OF CITY OF DES MOINES, Appellant.**

No. 97–426.

Supreme Court of Iowa.

Feb. 17, 1999.

Roger K. Brown, Des Moines, for appellant.

John R. Mackaman of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

This case involves an attempt by appellee, United States Cellular Corporation (U.S.Cellular), to obtain a special use permit for construction of a communications tower in the City of Des Moines. Appellant, the Board of Adjustment for the City of Des Moines, denied U.S. Cellular's request for such a permit. The district court sustained U.S. Cellular's petition for a writ of certiorari and directed the Board to issue the special use permit. The Board has appealed. We affirm.

I. *Background Facts and Proceedings.*

U.S. Cellular applied to the Board of Adjustment for a special permit to construct "a 100 foot monopole and a 12' × 20' equipment building for cellular communication use" at 1629 Martin Luther King Jr. Parkway in Des Moines. The property in question was zoned C–O commercial. Although a communications tower and equipment building were permitted uses in this district, a special permit was required.

At the time in question the property on which the tower was to be erected was being used for a dry cleaning business. The owners of this business had decided they could no longer remain in operation due to requirements imposed by the Environmental Protection Agency. U.S. Cellular offered the owners a lease/buy agreement that would allow it to construct the pole and building. U.S. Cellular was interested in this site because it was located in an area in which it currently had a need to improve cellular service.

The Board held a public hearing to address the company's application. Property owners within 200 feet of the site were notified of the hearing and were also provided response/comment cards to indicate support for or opposition to the proposed construction. Seven cards were returned: three in favor, three opposed, and one indicating no position.

At the hearing on U.S. Cellular's application, the staff of the zoning commission submitted a report stating:

> Staff recommends denial of this appeal [sic]. The question of monopole locations has and is being studied by the Plan and Zoning Commission and the City Council. A proposal has been prepared and is being looked at for possible minor modification. The applicant's proposal does not meet the standards in the *proposed* ordinance on several counts. As such, Staff strongly recommends against this request.

(Emphasis added.) A speaker at the hearing observed that the current draft of the proposed ordinance would prohibit communications towers in a C–O district.

A real estate agent spoke in support of the application. He informed the Board that he had been hired by U.S. Cellular to locate a site for the monopole within this particular service area. He had investigated other sites within the defined boundaries and the only larger site he found, other than a school yard, was located in a more residential neighborhood. The real estate agent also stated that the current owners of the proposed site, who were with him at the hearing, planned to close their business in the next several weeks for reasons unrelated to the pending application. Therefore, he noted, granting U.S. Cel-

lular's application would not remove an active business from the area.

One of the current property owners then spoke. She confirmed that she and her husband planned to close their business in the immediate future and that if U.S. Cellular did not buy the property, it would end up vacant with a deteriorating building. She also said she had driven by a similar tower on Hickman Road that had been landscaped so well by U.S. Cellular that she was unaware there was a tower there until another person pointed it out to her. Her husband echoed her comments, noting that U.S. Cellular would maintain the property, unlike other properties in the area "that are vacant and just going to trash." A neighboring property owner also expressed a desire to have U.S. Cellular occupy the property rather than having the site deteriorate.

The president of the Mondamin Presidential Association spoke next.[1] She requested that the Board deny the application for several reasons: (1) possible expansion of Martin Luther King Jr. Parkway in the future; (2) that other, more commercial areas would be more appropriate for the tower; and (3) that the closing of the dry cleaning business was contrary to neighborhood revitalization efforts. Two other individuals, one who appeared to live in the general area and one who did not live in the affected area, expressed opposition to the tower without giving any specific reasons.

Mark Dixon, a U.S. Cellular representative, referred the Board to previously submitted letters from the tower manufacturer that explained the engineering of the tower and how it would fall. He noted that towers buckle and fold down upon themselves; if the proposed tower were built within the setback requirements and fell, it would land within the confines of the site. Dixon also pointed out that the City had allowed other cellular poles to be located near busy highways.

The Board then opened the hearing to questions. In response to an inquiry about future plans for Martin Luther King Jr. Parkway, the staff stated that there were no particular plans at present. There was some discussion of an alternative site at Broadlawns Hospital and the use of a smaller, less intrusive antenna. Dixon responded that the reach of a smaller antenna would be insufficient to cover the area, and other proposed locations, such as Broadlawns, were outside the required range. No further information was requested of U.S. Cellular.

After this short discussion, the Board voted unanimously to deny the application based on the staff recommendation. In its written denial to U.S. Cellular, the Board stated:

> The selection of this relatively small site located adjacent to Martin Luther King Jr. Parkway and to residences in a neighborhood struggling to pull itself into a more desirable residential situation is unacceptable for containing such a large structure. Considerable organized neighborhood opposition exists.

U.S. Cellular then filed a petition for writ of certiorari in the district court challenging the action of the Board and asking that the court direct the Board to issue the requested permit. *See* Iowa Code § 414.15 (1995) (allowing persons aggrieved by a decision of the board of adjustment to challenge the decision in the district court by filing a petition pointing out the illegality in the board's decision). The district court granted the writ of certiorari and in response, the Board made a return that included the complete record before the Board. *See id.* §§ 414.16, .17 (specifying procedure for issuing a writ and making a return to the writ). No additional evidence was taken by the court at the hearing on U.S. Cellular's petition. *See id.* § 414.18 (allowing district court to take additional evidence).

Upon its review of the Board's decision, the district court held that the Board acted illegally in rejecting U.S. Cellular's application. The court concluded that the Board could not justify its action on the basis of an ordinance that had not been adopted when the Board made its decision.[2] The court also

---

1. Although the record is not clear on this point, it appears that this association is a neighborhood group whose area encompasses the site in question.

2. By the time of the district court proceedings, the City of Des Moines had amended the zoning ordinance to prohibit communications towers in a C–O commercial district.

found the two reasons given in the Board's written denial—that the site was unacceptably small and there was considerable neighborhood opposition—were inadequate to sustain the Board's action. The court noted that there was no evidence in the record to support these grounds for denial. *See* 47 U.S.C. § 332(c)(7)(B)(iii) (1996) (a provision of the Telecommunications Act of 1996 requiring that any decision by a local government to deny a request to construct personal wireless facilities "be in writing and supported by substantial evidence contained in a written record").

Although the Board requested that the district court remand the matter to the Board for further action, the district court refused to do so. The court first noted that the statute authorizing judicial review of the Board's action did not provide for a remand.[3] The court also thought that it would be unfair to allow the Board "two bites at the apple." Finally, the court held that a remand would be inconsistent with the Telecommunications Act's requirement that a reviewing court should hear and decide such an action "on an expedited basis." *See* 47 U.S.C. § 332(c)(7)(B).

The district court reversed the decision of the Board and directed it to issue a special use permit to U.S. Cellular. The court also ordered the Board to pay costs, finding that it had acted "in bad faith or with malice" in making its decision. *See* Iowa Code § 414.18 (allowing award of costs where board acts "with gross negligence or in bad faith or with malice"). The Board appealed the district court's decision.

## II.  *Scope of Review.*

■ It is helpful to first discuss the district court's scope of review in examining the Board's action. Iowa Code section 414.18 provides that the matter "shall be tried de novo" in the district court. We have interpreted this statute to mean that the district court makes its own findings of fact. *See Grandview Baptist Church v. Zoning Bd. of Adjustment,* 301 N.W.2d 704, 706 (Iowa

1981); *Weldon v. Zoning Bd.,* 250 N.W.2d 396, 401 (Iowa 1977). If the facts found by the district court do not support the board's decision, then the illegality of the board's action is established. *See Grandview Baptist Church,* 301 N.W.2d at 706; *Weldon,* 250 N.W.2d at 401. Conversely, "[i]f the district court's findings of fact leave the reasonableness of the board's action open to a fair difference of opinion, the court may not substitute its decision for that of the board." *Weldon,* 250 N.W.2d at 401; *accord Grandview Baptist Church,* 301 N.W.2d at 706.

■ Our scope of review on appeal of the district court's decision is at law. *See Chrischilles v. Arnolds Park Zoning Bd. of Adjustment,* 505 N.W.2d 491, 493 (Iowa 1993). Thus, we are bound by the district court's findings "if they are supported by substantial evidence in the record." *Id.* We are not bound, of course, by any erroneous legal rulings made by the district court. *See id.*

## III.  *Issues on Appeal.*

The Board has not appealed from the district court's ruling that the Board acted illegally in applying an ordinance not then in effect when deciding whether U.S. Cellular's application for a special use permit should be granted. Therefore, we express no opinion on whether the Board may properly apply an ordinance, not yet enacted, in considering an application for a special permit. *See generally* 8 J. Jeffrey Reinholtz & Timothy P. Bjur, *The Law of Municipal Corporations* § 25.155, at 691 (3d ed. rev.vol.1991) (stating that a zoning authority may deny a permit request that is repugnant to a *pending* ordinance) [hereinafter *"The Law of Municipal Corporations"*]. Although the Board complains on appeal that the district court incorrectly interpreted the Telecommunications Act, we find it unnecessary to address that issue because it is not pertinent to the dispute on appeal—whether the remedy granted by the district court was proper.

---

**3.** Section 414.18 states that "[t]he court may reverse or affirm, wholly or partly, or may modify the decision brought up for review." The statute does not mention a remand to the board of adjustment.

With respect to the appropriate remedy, the Board initially contends that a special permit may not be issued under the repealed ordinance; rather, it argues, the ordinance now in effect applies. The Board reasons that because communications towers are not permitted in a C–O district under the new ordinance, this court should reverse the district court and dismiss U.S. Cellular's petition.

Alternatively, the Board claims it cannot be directed to issue a special permit because U.S. Cellular failed to present sufficient evidence showing that its application met the requirements of the old ordinance for issuance of a special permit. The Board asks that the case be remanded to it for a determination whether the application complies with the prior zoning ordinance. The Board argues that section 414.18 does not prohibit such a remand.

### IV. Which Ordinance Should Be Applied in Determining Whether U.S. Cellular Should be Granted a Special Use Permit?

■ A. *Applicable law.* A preliminary issue that must be decided is whether the issues on appeal are governed by the new ordinance that has been adopted since the hearing or by the ordinance that was in effect when the Board ruled on the application. The rule in most states is that "a reviewing or appellate court must decide a case based on the zoning law as it exists at the time of the court's decision." Edward H. Ziegler, *Rathkopf's The Law of Zoning and Planning* § 26.02[2][a], at 26–3 to 26–4 (4th ed.1996) [hereinafter *"Rathkopf's"*]; *accord* Kenneth H. Young, *Anderson's American Law of Zoning* § 27.38, at 636 (4th ed.1997) [hereinafter *"Anderson's"*]. The purpose of this rule "is to prevent an appellate court from issuing orders for the construction of improvements contrary to presently existing legislative provisions." *Atlantic Richfield Co. v. Board of Supervisors,* 40 Cal.App.3d 1059, 1065, 115 Cal.Rptr. 731 (1974). This rule is consistent with the principle that even a validly-issued permit "may be revoked by the administrative body on the basis of a subsequent change in the zoning laws unless

the permittee has made substantial improvements in good faith reliance on the permit." *Id.; accord O'Hare Int'l Bank v. Zoning Bd. of Appeals,* 37 Ill.App.3d 1037, 347 N.E.2d 440, 442 (1976); *Thomas v. Zoning Bd. of Appeals,* 381 A.2d 643, 647 (Me.1978).

A narrow exception to this rule has been recognized when the board acts in bad faith. *Rathkopf's* § 26.02[2][c][i], at 26–6 to 26–8; *Anderson's* § 27.38, at 639–40. The factual patterns that have prompted courts to apply this exception appear to have a common theme. In *Humble Oil & Refining Co. v. Wahner,* 25 Wis.2d 1, 130 N.W.2d 304 (1964), the Wisconsin Supreme Court held that despite the fact that the applicant, Humble, did not have a vested right at the time the new ordinance was adopted, the town could not deny a building permit. 130 N.W.2d at 310. The court's conclusion was based on the fact that "the town officials were trying to keep one jump ahead of Humble and were attempting to change the rules after they had been hailed into court for what Humble believed was arbitrary, unreasonable, and capricious action." *Id.* at 311. The court noted that the city had attempted "to zone out a use." *Id.* Similarly, in *Hatcher v. Planning Board,* 111 A.D.2d 812, 490 N.Y.S.2d 559 (1985), the court refused to apply the general rule, noting that "[local] officials may not, in bad faith, delay [or deny] approval of a properly submitted and conforming building plan while they alter a zoning ordinance to bar the prospective development." *Hatcher,* 490 N.Y.S.2d at 560. In these cases, the zoning authority acted illegally to deny or delay the granting of a permit, thereby preventing the applicant from acquiring vested rights to complete the project before any amendments to the ordinance became effective.

Some courts have rejected the general rule and held that a zoning authority must apply the ordinance in effect at the time of the application. *See Rathkopf's* § 26.02[3][a], at 26–9; *The Law of Municipal Corporations* § 25.155, at 692. The rationale for this rule is that it allows greater certainty for property owners in planning for the development of their property. *See Rathkopf's* § 26.02[3][a], at 26–9; *The Law of Municipal Corporations* § 25.155, at 692. Courts adopting this

minority view have also recognized exceptions. If the subsequently enacted ordinance was pending when the permit application was filed, the later ordinance governs the application. *See Rathkopf's* § 26.02[3][b][i], at 26–10; *The Law of Municipal Corporations* § 25.155, at 692. In addition, some courts have refused to apply the old ordinance where the zoning board shows "a compelling countervailing public interest." *The Law of Municipal Corporations* § 25.155, at 692.

■ We think the general rule is most consistent with our law that an applicant has no vested right to a particular zoning ordinance. *See Quality Refrigerated Servs. v. City of Spencer*, 586 N.W.2d 202, 206 (Iowa 1998) (holding that "no property owner has a vested right in the continuation of a particular zoning classification" but may acquire "the right to complete the development of his property in accordance with his plans as of the effective date of the new ordinance" if he has made substantial expenditures in reliance on a validly-issued permit). If an applicant, who has been *granted* a permit, can have it revoked where he has no vested rights, it follows that an applicant, who was erroneously *denied* a permit and has acquired no vested rights, should not have any greater rights. Therefore, we will apply the new ordinance here, unless U.S. Cellular has a vested right or the bad-faith exception to the general rule applies.

B. *Application of law to facts.* Here, U.S. Cellular makes no claim that it has acquired any vested rights; indeed, it has not yet been issued a permit that could provide a basis for the acquisition of such rights. Thus, we must decide whether the exception to the rule applies.

■ The general rule applying the ordinance in effect at the time of the appellate court's decision does not apply where the board acted in bad faith. We think this exception applies here. The district court made a factual finding that the Board acted in bad faith and/or with malice in purposely applying an ordinance that was still being drafted as the basis for its denial of U.S. Cellular's application. This finding is binding on us if supported by substantial evidence; we think it is.

The trial court noted that at the hearing the Board approved a motion to deny the application "based on staff recommendation." That recommendation was not based on any deficiencies in the application under the applicable ordinance, but instead was based on the failure of the proposed structure to comply with an ordinance then being drafted. The district court also observed that the Board's written decision did not accurately reflect its action at the hearing. In its written decision the Board did not mention noncompliance with the anticipated ordinance, but rather stated that the application was denied because the site was too small for such a large structure and because there was "considerable" opposition. In fact, there was nothing in the record before the Board to substantiate its conclusion that the site was too small. To the contrary, the only facts before the Board consisted of information from the manufacturer that if the tower fell, it would buckle and land within the confines of the lot. The court also found that the Board misrepresented the strength of the opposition to the application. The Board characterized the opposition as "considerable"; yet of the seven response cards that were returned, three were in favor, three were opposed, and one did not indicate a position. Although the president of the neighborhood association stated at the hearing that the association opposed the tower, an owner of two properties (who had not returned a response card) appeared at the hearing to express support for the tower. The Board's denial of U.S. Cellular's application was so patently illegal that the Board does not even attempt to justify it on this appeal.[4]

---

4. It is questionable whether neighborhood opposition alone, even if considerable, could justify the denial of a permit for construction of a personal wireless facility. *See Illinois RSA No. 3, Inc. v. County of Peoria*, 963 F.Supp. 732, 745 (C.D.Ill.1997) (holding "generalized concerns" about the proposed site expressed by local property owners were insufficient to support the board's denial); *Western PCS II Corp. v. Extraterritorial Zoning Auth.*, 957 F.Supp. 1230, 1236 (D.N.M.1997) (holding "generalized concerns" expressed by neighbors do not constitute "sub-

We think the Board's action in denying the application, without any legal justification, and the later discrepancies between its action, its written decision and the evidence adduced at the hearing constitute substantial evidence in support of the district court's finding that the Board acted in bad faith and/or with malice. By virtue of its illegal action the Board avoided having to grant the application, and the resulting delay gave it time to enact the new ordinance prohibiting the requested use. Because the Board acted in bad faith and/or with malice, the exception to the general rule applies. Therefore, we will apply the ordinance in effect at the time of the hearing in determining whether the remedy ordered by the district court—issuance of a permit—is proper and/or whether the matter should be remanded to the Board.[5]

### V. Did the District Court Err in Failing to Remand This Case to the Board for Further Proceedings?

A. *Court's authority to remand.* The Board claims on appeal that the district court erred in holding that the court lacked the authority under section 414.18 to remand this case to the Board for further proceedings. We find it unnecessary to decide this issue, however, because the district court did not rely exclusively on the wording of section 414.18 to support its decision not to remand. The district court also concluded that (1) a

remand would be inconsistent with the requirement of the Telecommunications Act that appeals be resolved "on an expedited basis," *see* 47 U.S.C. § 332(c)(7)(B), and (2) it would be unfair to give the Board "two bites at the apple." Clearly, the district court decided a remand was inappropriate, even if permitted by the statute. More importantly, section 414.18 most certainly does not *require* that the district court remand a matter appealed to it. This statute expressly allows the district court to reverse the Board's action. *See* Iowa Code § 414.18. Therefore, we need not decide whether the district court has the power to remand this matter to the Board; it is enough that the district court's decision to reverse rather than remand was within its authority.[6]

B. *Court's alleged failure to determine compliance with ordinance.* That brings us to the Board's argument that a remand is necessary because the district court failed to specifically determine whether U.S. Cellular's proposed tower met the requirements of the former ordinance. Under our rules of civil procedure, a district court hearing a case without a jury is required to make findings of fact and separately state its conclusions of law. *See* Iowa R. Civ. P. 179(a). "One of the primary purposes of th[is] rule is to advise the parties and the appellate court of the bases of the trial court's decision so that the issues for appeal

stantial evidence"); *BellSouth Mobility Inc. v. Gwinnett County*, 944 F.Supp. 923, 928 (N.D.Ga. 1996) (holding "generalized concerns do not constitute substantial evidence" to support a permit denial); *C–Call Corp. v. Zoning Bd. of Appeals*, 298 Ill.App.3d 1128, 233 Ill.Dec. 136, 700 N.E.2d 441, 443 (1998) (holding generalized concerns expressed by local objectors "about safety, decreasing property values and aesthetics" did not constitute substantial evidence).

5. One alternate basis for the district court's ruling that the Board's denial of U.S. Cellular's application was illegal was the district court's conclusion that the new ordinance constituted an unconstitutional delegation of legislative power. The Board challenges this conclusion on appeal. We find it unnecessary to decide this issue, however, because (1) the Board has not appealed from the ruling that it acted illegally in denying the application on the basis of a draft ordinance, and (2) as we have decided, the new ordinance is not relevant to our determination of the appro-

priateness of the district court's remedy for the Board's illegal action.

6. Many courts from other jurisdictions have ordered the issuance of a permit when the administrative body has denied a permit for reasons not supported by substantial evidence. *E.g. Omnipoint Corp. v. Zoning Hearing Bd.*, 20 F.Supp.2d 875, 880–81 (E.D.Pa.1998); *AT & T Wireless PCS, Inc. v. Winston–Salem Zoning Bd. of Adjustment*, 11 F.Supp.2d 760, 764 (M.D.N.C.1998); *AT & T Wireless PCS Inc. v. City of Chamblee*, 10 F.Supp.2d 1326, 1333 (N.D.Ga.1997); *Cellco Partnership v. Town Plan & Zoning Comm'n*, 3 F.Supp.2d 178, 187 (D.Conn.1998); *Smart SMR of N.Y., Inc. v. Zoning Comm'n*, 995 F.Supp. 52, 57, 62 (D.Conn.1998); *Virginia Metronet, Inc. v. Board of Supervisors*, 984 F.Supp. 966, 977 (E.D.Va.1998); *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 52 (D.Mass.1997); *Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment*, 152 N.J. 309, 704 A.2d 1271, 1284 (1998).

may be readily determined." *Brichacek v. Hiskey,* 401 N.W.2d 44, 46 (Iowa 1987). When the district court fails to comply with rule 179(a), a party may request that the court enlarge or amend its findings and conclusions. *See* Iowa R. Civ. P. 179(b). When a motion to enlarge or amend is not made, the appellate court "assume[s] as fact an unstated finding that is necessary to support the judgment." *Brichacek,* 401 N.W.2d at 46; *accord Bankers Trust Co. v. Fidata Trust Co.,* 452 N.W.2d 411, 413 (Iowa 1990).

■ Here, the district court concluded that U.S. Cellular was entitled to a special permit. This conclusion was warranted only if U.S. Cellular's application complied with the governing ordinance. Although the Board filed a posttrial motion under rule 179(b), it did not request a ruling on this issue. Therefore, we presume the district court found the facts necessary to support its decision. Accordingly, we find no ground for reversal based on the district court's failure to specifically state that the proposed use complied with the requirements of the ordinance.

■ *C. Sufficiency of the evidence to support district court's finding.* Finally, the Board contends that the record "is devoid of evidence to support a finding that the tower and antenna conform with [the relevant] standards and principles." The zoning ordinance in effect at the time of the Board's hearing on U.S. Cellular's application empowered the Board of Adjustment to issue a special permit authorizing communication antenna operations in any district, other than an "FW" district, after public hearing. The procedure for obtaining such a permit was set out in the ordinance:

Applications for a special permit under the terms of this section shall be accompanied by evidence concerning the feasibility of the proposed request and its effect on surrounding property and shall include a site plan defining the area to be developed for structures, the area to be developed for parking, the locations of sidewalks and driveways and the points of ingress and egress, including access streets where required, the location and heights of walls, the location and type of landscaping and the location, size, and number of signs.

Before issuing any special permit for any of the above buildings or uses, the Board of Adjustment shall review the conformity of the proposed building or use with the standards of the Comprehensive Plan, and with recognized principles of civic design, land use planning, and landscape architecture. The Board may approve the special permit as submitted or, before approval, may require that the applicant modify, alter, adjust or amend the proposal as the Board deems necessary to the end that it preserve the intent and purpose of this Ordinance to promote public health, safety, morals, and the general welfare.

Des Moines Municipal Code § 2A–27 (1996).

The Board claims on appeal that U.S. Cellular failed to produce any evidence that "the design and location of the proposed tower is *in 'conformity' with* 'the standards of the Comprehensive Plan, and with recognized principles of civic design, land use planning, and landscape architecture.'" (Emphasis added.) We think it is significant that the Board does not argue on appeal that there was insufficient evidence of the design and location such that the Board was unable to determine compliance with the relevant standards and principles. Thus, the only issue we must address on this appeal is whether U.S. Cellular was required to introduce evidence demonstrating *how* its proposal complied. We find no such requirement in the ordinance.

The quoted portion of the ordinance addresses two distinct matters. The first quoted paragraph specifically sets forth the "evidence" that "shall ... accompan[y]" the "application." The required evidence consists of three items: (1) the feasibility of the proposed request; (2) its effect on surrounding property; and (3) a site plan. The Board claims no deficiency in U.S. Cellular's compliance with this portion of the statute. The second quoted paragraph, in contrast to the first, is not addressed to the applicant. Rather, it instructs *the Board* with respect to the review *it* must conduct prior to issuing a special permit: *"The Board of Adjustment* must review the conformity of the proposed building or use with the standards of

the Comprehensive Plan, and with recognized principles of civic design, land use planning, and landscape architecture."

The Board's argument that the applicant is required to produce evidence of compliance with these standards and principles confuses the applicant's responsibilities with the Board's responsibilities. Under the terms of the ordinance, the applicant must supply the information specified in the first paragraph quoted above and then, based upon this information, the Board determines whether the proposed use complies with the relevant standards and principles. The ordinance does not require evidence of *how* the proposed use measures up against the Comprehensive Plan and relevant principles and we decline to read such a requirement into the ordinance.[7] Therefore, we reject the Board's argument that U.S. Cellular's application and supporting evidence was flawed in this respect.

Other than the alleged deficiency we have just rejected, the Board has pointed to no other inadequacy in U.S. Cellular's submission. Significantly, the Board has not alerted us to any failure by U.S. Cellular with respect to its production of "evidence concerning the feasibility of the proposed request and its effect on surrounding property" or in regard to the site plan submitted to the Board. *See* Des Moines Municipal Code § 2A–27. Additionally, the Board has not directed our attention to any specific part of the City's comprehensive plan or any particular principles of civic design, land use planning, or landscape architecture that are violated by U.S. Cellular's proposed use. Regardless of which party bears the burden of proof in the proceedings before the Board, it is incumbent upon the Board on appeal to point out the specific error in the district court's finding that U.S. Cellular's request met the requirements of the ordinance. *See Hyler v. Garner,* 548 N.W.2d 864, 870 (Iowa 1996) (holding that blanket assertion on appeal that "trial court's findings are not supported by the evidence" is insufficient to identify error); *cf. Roger Williams College v. Gallison,* 572 A.2d 61, 62 (R.I.1990) (refusing to remand to the

board, stating a "remand for further proceedings should be based upon a genuine defect in the proceedings in the first instance, which defect was not the fault of the parties seeking the remand"). The Board has failed to identify such a deficiency here. Therefore, we have no basis upon which to say that the district court erred in its factual determinations and legal conclusions with respect to U.S. Cellular's right to a permit.

VI. *Summary.*

Due to the Board's bad-faith denial of U.S. Cellular's request for a special permit, this appeal is governed by the ordinance in effect at the time of the Board's decision. Contrary to the contention of the Board, this ordinance did not require U.S. Cellular to produce evidence of how its proposed use conformed to the standards and principles to be applied by the Board in deciding whether to grant the application. The Board has demonstrated no flaw in the district court's presumed finding that the proposed use conformed to these standards and principles. Nor has the Board shown that the district court was required to remand this matter to the Board for further proceedings. Therefore, we affirm.

**AFFIRMED.**

---

7. Although an applicant is not required to submit evidence of how its request complies with the applicable standards and principles, that is not to say that an applicant who foregoes such evidence does not run a greater risk of an adverse assessment on this matter by the Board.