# IN THE COURT OF APPEALS OF IOWA

No. 23-0217
Filed June 5, 2024

**BRYAN NORRIS,**
      Plaintiff-Appellee,

**vs.**

**TRUDY PAULSON,**
      Defendant-Appellant,

**and**

**CITY OF DES MOINES,**
      Defendant.

_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

The city of Des Moines appeals the district court's denial of its motion for summary judgment. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

John O. Haraldson, Assistant City Attorney, Des Moines, for appellant.

Robert G. Rehkemper of Gourley, Rehkemper, & Lindholm, P.L.C., West Des Moines, for appellee.

Heard by Tabor, P.J., and Buller and Langholz, JJ.

**TABOR, Presiding Judge.**

Des Moines police responded to complaints about a homeless camp near the Raccoon River in September 2019. While there, three officers checked the unhoused individuals for outstanding warrants. During that process, Bryan Norris brandished a shovel and then a knife. Feeling threatened, Officer Trudy Paulson shot him in the arm and abdomen. Norris sued Paulson and the city alleging unreasonable seizure under the state constitution and common law assault.[1] The district court denied the city's motion for summary judgment.

After that denial, our supreme court overruled *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), which had recognized standalone suits for damages under the Iowa Constitution. *See Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023). In this interlocutory appeal, the city argues that *Burnett* eliminated Norris's constitutional claim. It also contends that Officer Paulson's use of force was reasonable under Iowa Code section 804.8 (2022). On the first issue, the city is correct that Norris's constitutional claim cannot move forward after *Burnett*. On the second issue, the district court was correct in deciding the common law assault claim was for the jury to decide. Thus, we affirm in part, reverse in part, and remand for trial on the assault claim.

## I. Facts and Prior Proceedings

"Stitches, put it down!" That shout echoed through the campsite as Norris's friends urged him to obey Officer Paulson's command to drop the shovel he was wielding. Stitches was Norris's nickname at the camp because of his facial tattoo.

---

[1] For ease of analysis, we will refer to the defendants collectively as the city.

Paulson—along with Officer Shawna Isaac and Sergeant Yanira Scarlett—had encountered "eight to ten" people and several tents set up near the railroad tracks along the river.[2] The officers approached each person and asked for identification cards—and if they did not have one, their names and dates of birth. Norris gave a fake name and date of birth—telling them he was "Bradley Roberts" from Florida. Finding no results in a law enforcement database, Sergent Scarlett told him he could give his real name or go to jail until he complied. Officer Paulson added: "If you have warrants, it's inevitable." So Norris provided his real name. The officers found that he had a warrant for failure to appear on a simple misdemeanor theft charge. But before officers could tell Norris about the active warrant, he took off running. The officers gave chase but before they could reach him, Norris jumped into the river.

While Officer Isaac searched for Norris, Paulson and Scarlett arrested other unhoused individuals with warrants. As Officer Paulson handcuffed another man, Norris returned. He stood on the riverbank holding a shovel. He crouched down as other unhoused individuals yelled for him to stop. Paulson warned Norris that she would shoot if he didn't drop the shovel. Soon he dropped it but picked up a knife. In her initial interview after the shooting, Officer Paulson described the knife as a machete and estimated its length at twelve inches. She also recalled that Norris raised the knife over his head at a ninety-degree angle. As it turns out, the knife's blade measured just four and one-half inches, and the video showed that Norris was swinging the knife by his side, not over his head.

---

[2] The incident was recorded on the officers' body cameras.

The video shows Norris turning toward Paulson and leaning over in a crouching position. Paulson again warned that she would shoot him. Norris then appeared to step back;[3] and Paulson fired once, then twice, shooting Norris in his arm and the left side of his torso. The parties debate the distance between Norris and the officer at the time of the shooting. In her interview, Officer Paulson estimated that Norris was fifteen feet away. The city took measurements after the event showing Norris was approximately twenty feet away. Norris disputes that estimate because the city measured from the officer's shell casing to "the pool of blood where Norris was dragged" for emergency care after the shooting. Norris estimated he was "a minimum of twenty-four feet away" from Paulson when she shot him. "Taking the facts in the light most favorable to Norris," the district court determined that Officer Paulson was twenty-four feet away when she shot him.

After the two shots, the officers ran to Norris as he screamed. Sergeant Scarlett started to handcuff Norris but then pulled him away from the river bank so he did not fall into the water. She also applied pressure to his wound while waiting for emergency medical care. Norris was taken to the hospital. He survived the shooting but suffered injuries to his diaphragm, ribs, and kidney, and surgeons removed his spleen.

---

[3] The parties dispute what the video shows at this point. On the one hand, the city attorney argued that Norris "took an important step back towards her approximately one second before she fired the weapon." On the other hand, Norris's counsel argued: "When you watch the video, there were no steps that Mr. Norris made towards Paulson. None. Certainly not a lunge. Certainly not a charge. Certainly not a threatening matter. He is walking back."

The State charged Norris with two counts of assault on a peace officer and one count of interference with official acts while displaying a dangerous weapon, all class "D" felonies. He pleaded guilty to the interference charge.[4]

Norris then sued Paulson and the city of Des Moines to recover damages. The city moved for summary judgment. In December 2022, the district court denied that motion pointing to "disputed facts regarding whether Officer Paulson violated Norris's constitutional rights." It also found that qualified immunity did not shield Officer Paulson from Norris's constitutional claims. The district court also reasoned that because the city did not make "any distinct arguments" in response to Norris's common-law count, the analysis on the constitutional issue controlled that assault claim. In April 2023, our supreme court granted the city's application for interlocutory appeal. One month later, the supreme court decided *Burnett*. In December, the supreme court transferred this appeal to us. We heard the parties in oral argument and now resolve the city's claims.

## II. Scope and Standard of Review

We review rulings on motions for summary judgment for correction of legal error. *Venckus v. City of Iowa City*, 990 N.W.2d 800, 807 (Iowa 2023). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[4] In its statement of undisputed facts in support of summary judgment, the city noted that Norris was also charged with first-degree murder in connection with the July 2019 death of a third person. Human remains were found in the homeless camp in October 2019. Norris later pleaded guilty to attempted murder, voluntary manslaughter, conspiracy to commit a forcible felony, and abuse of a corpse. A police report included in the summary-judgment record theorized: "This may explain some of his actions in this investigation." But as the city explained, Officer Paulson did not know about those criminal acts at the time of the shooting.

that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). We view the record in the light most favorable to Norris, as the nonmoving party. *See Geisler v. City Council of Cedar Falls*, 769 N.W.2d 162, 165 (Iowa 2009). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). As the moving party, the city must show it is entitled to prevail as a matter of law. *See Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 71 (Iowa 2004). "If reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists." *Id.* (citation omitted).

## III. Analysis

The city raises two questions. (1) Did *Burnett* eliminate Norris's constitutional claims? And (2) did the district court err in denying summary judgment on Norris's claim of common law assault? We consider them in turn.

### A. Unreasonable Seizure Under the Iowa Constitution

The city first contends that after *Burnett*, Norris may no longer pursue a private right of action for damages under the Iowa Constitution. It relies on *Venckus*, 990 N.W.2d at 803, *White v. Harkrider*, 990 N.W.2d 647, 652 (Iowa 2023), and *Carter v. State*, No. 21-0909, 2023 WL 3397451, at *1 (Iowa May 12, 2023) (per curiam). In those cases, the supreme court found that plaintiffs' pending constitutional tort claims could not proceed. Norris counters that the city did not preserve error because it did not raise the issues addressed in *Burnett* at the summary judgment hearing.

The lack of error preservation does not defeat the city's position on Norris's constitutional claims. As the city argues, Norris's claims arising under *Godfrey* are no longer viable. *See Christiansen v. Eral*, No. 22-1971, 2024 WL 108848, at *3 (Iowa Ct. App. Jan. 10, 2024) (concluding constitutional claims pending at the time of *Burnett* decision were barred); *Dishman v. State*, No. 22-1491, 2023 WL 8068563, at *2 (Iowa Ct. App. Nov. 1, 2023) ("We disagree with Dishman that the question of retroactive application of *Burnett* remains unanswered."). Thus, we reverse the summary judgment ruling on Norris's constitutional claims and remand for their dismissal. *See Dishman*, 2023 WL 8068563, at *3 ("In reaching this conclusion, we mean no criticism of the district court, as the district court did not have the benefit of *Burnett*, *Venckus*, and *Carter* when it ruled on the motion for summary judgment.").

## B. Common Law Assault

The city next argues that the district court erred in denying its motion for summary judgment on Norris's common law assault claim. Since it did not have the benefit of *Burnett*, the district court gave minimal attention to Norris's common law assault claim—finding that its analysis of the constitutional tort controlled the assault count. So because it was the more robust analysis, we turn to the district court's treatment of Norris's constitutional claim. The district court found a genuine issue of material fact:

> A reasonable jury could find Norris did not pose an imminent and serious risk to officers or other individuals when Officer Paulson fired her weapon. . . . Officer Paulson was 24 feet from Norris. Norris did not make any verbal threats, kept the knife lowered below his waist, and had not taken any steps toward Officer Paulson. Norris had in fact retreated away from Officer Paulson by six steps prior to the shot. There is no record evidence of any other individuals closer to

Norris than Officer Paulson.  The City asserts that Norris took a step toward Officer Paulson in the second before the shots.   Plaintiff asserts he did not.  Norris did make some movement in the seconds before he was shot.  Norris rotated 180 degrees back toward Paulson and then it appears he shifted his weight back and forth between his legs.  The City asserts this movement was threatening behavior, but taking the facts in the light most favorable to Norris, the movement could be interpreted as an effort to maintain his balance as he stepped near the edge of the river's embankment and rotated back around.

Transferring that factual analysis to Norris's common law assault claim, we find no error in the district court's assessment.  Civil assault requires proof that the officer did "(1) an act intended to put another in fear of physical pain or injury; [or] (2) an act intended to put another in fear of physical contact which a reasonable person would deem insulting or offensive; and the victim reasonably believes that the act may be carried out immediately."   *White*, 990 N.W.2d at 656 (citation omitted) (alteration in original).  The city does not dispute that the shooting was an assault.   Rather, the city maintains that Officer Paulson was justified in her actions.[5]  For its justification defense, the city relies on Iowa Code section 804.8(1), which states: "A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest."

Norris responds that Officer Paulson was not making a lawful arrest as none of the officers on the scene informed him "of their intention to arrest him nor of the reason for his arrest."  *See* Iowa Code § 804.14 (listing requirements for making a

---

[5] In its appellant's brief, the city discusses qualified immunity.  But at oral argument, the city clarified that it was not asserting a qualified immunity defense and that "at this point we just have the issue of the common law."  Thus, we will view the city's defense as one of justification.

lawful arrest). In the alternative, Norris argues that even if Paulson was attempting an arrest when she shot him, a jury question exists whether the amount of force she used was reasonable under the circumstances. *See id.* § 704.1 (defining "reasonable force" as "that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss").

Assuming without deciding that Officer Paulson was making a lawful arrest, the city failed to show that there was no genuine issue of material fact on the officer's claim of justification. The reasonable force inquiry under section 804.8 is an objective standard. *Chelf v. Civ. Serv. Comm'n of City of Davenport*, 515 N.W.2d 353, 355 (Iowa Ct. App. 1994) (finding support for that interpretation in *Graham v. Connor*, 490 U.S. 386 (1989)). Both parties agree that *Graham* is instructive. Under *Graham*, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. at 396. To be reasonable, the force applied must be "proportionate to the need for force raised by the circumstances." *State v. Dewitt*, 811 N.W.2d 460, 469–70 (Iowa 2012). And deadly force is only reasonable if a suspect poses "an immediate threat of death or serious bodily injury." *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002). The reasonableness of the officer's use of force is usually a question of fact to be determined by the jury. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991); *see also Abraham v. Raso*, 183 F.3d 279, 290 (3rd Cir. 1999).

Viewing the facts in the light most favorable to Norris, there is a genuine dispute of material fact on which a reasonable jury could find that he did not pose an imminent threat to Paulson or bystanders. Norris can be seen in the body cam

footage swaying back and forth. This motion could be taken as lunging or as securing his balance near the riverbank. "It should be considered a rare case where video evidence leaves no room for interpretation by a fact finder." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023). The parties also diverge on whether Norris held the shovel and the knife at the same time. Reasonable jurors could reach different conclusions from the video footage, coupled with the further evidence. And facts that can be interpreted multiple ways from a video "should be viewed in the light most favorable to the non-moving party." *Lee v. Russ*, 33 F.4th 860, 865 (6th Cir. 2022) (citation omitted); *see also Williams v. City of Burlington*, 27 F.4th 1346, 1351 (8th Cir. 2022) (holding that whether a police officer was unreasonable in believing that a suspect was taking a firing position rather than surrendering as seen on body camera footage was a material fact issue).

We note that Officer Paulson mistakenly recalled that the knife was a machete. She also perceived Norris as having raised it over his head in a "forward stabbing motion." She later acknowledged the video did not support her recollection. We do not make these observations to criticize Officer Paulson, but her initial beliefs could persuade a jury that her response was disproportionate to the circumstances. No other officers fired their guns. Norris was twenty-four feet away, unbalanced and swaying. Under the objective standard in *Graham*, a jury could find that a reasonable officer in Paulson's position would not perceive Norris

as an imminent threat.[6]  These issues of fact are more appropriately decided by a jury.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[6] At oral argument, the city attorney conceded that the question of Paulson's reasonableness in use of force under section 804.8(1) was one of fact.