WIGGINS, Justice.
A person whom the courts released from the State’s civil commitment unit for sexual offenders (CCUSO) and then recommitted to a care center attacked the estate’s decedent at the care center. The estate filed a petition against the care center and the State claiming negligence. The care center brought a third-party claim against the State for indemnity. The State filed a motion for summary judgment arguing it owed no duty of care to the estate’s decedent or the care center. The district court agreed and entered judgment for the State. The estate and the care center appealed. We transferred the case to the court of appeals. The court of appeals affirmed the district court judgment. We granted further review. On appeal, we find on the issues preserved that the State did not owe a duty of care to either the estate’s decedent or the care center. Accordingly, we affirm the decision of the court of *582 appeals and the judgment of the district court.
I. Background Facts and Proceedings.
Mercedes Gottschalk’s family admitted her to the Pomeroy Care Center in Pomer-oy on September 5, 2009. Thereafter, on December 8, 2010, the court civilly committed William Cubbage to the Pomeroy Care Center. Cubbage’s previous criminal and medical history is relevant to this appeal.
The State previously convicted Cubbage of “four sexually violent offenses ...: assault with intent to commit sexual abuse (in 2000), indecent contact with a child (1997 and 1991), and lascivious acts with a child (1987).” In re Det. of Cubbage, 671 N.W.2d 442, 443 (Iowa 2003). A doctor diagnosed him with pedophilia and a personality disorder not otherwise specified with antisocial and narcissistic features. Id. The doctor believed those conditions were “mental abnormalities” that “made it seriously difficult for Cubbage to control his sexually dangerous behavior.” Id. On May 21, 2002, Cubbage was adjudicated a sexually violent predator pursuant to Iowa Code chapter 299A, and the court committed him to the custody of the director of the Iowa Department of Human Services for placement at CCUSO until his “mental abnormality has so changed that he is safe to be placed in the transitional release program or discharged.”
In August 2006, while still in custody at CCUSO, a doctor diagnosed Cubbage with dementia of the Alzheimer’s type, declining mental functioning, and several physical and mental ailments. A ninety-day patient assessment at CCUSO in May 2010, indicated that the staff agreed the “best avenue for Mr. Cubbage would be to place him in secure care for the rest of his life ... pending DHS Directors approval.”
In July, Dr. Michael Ryan, a psychologist at CCUSO, prepared an annual report summarizing Cubbage’s progress, and he made recommendations regarding Cub-bage’s possible release. Based on his evaluation, Dr. Ryan determined Cubbage did not meet the criteria for transitional release, but that he “does not currently meet the definition of a sexually violent predator as described in 229A.”
On November 16, a hearing was held in Cherokee County pursuant to Iowa Code section 229.13 (2011). The district court found Cubbage seriously mentally impaired and, due to his dementia and executive dysfunction, he was a danger to himself and others. Thus, the district court ordered Cubbage placed in the Pomeroy Care Center for appropriate treatment under the care of Dr. Ted George of Pocahontas, Iowa.
Subsequently, on November 24, a state public defender acting on behalf of Cub-bage, filed a motion pursuant to Iowa Code section 229A.10 requesting the court discharge Cubbage from civil commitment. The motion provided that the director of human services, the Iowa attorney general’s office, and the Iowa public defender’s office mutually agreed Cubbage is “unable to obtain further gains from his civil commitment at CCUSO” and is “seriously mentally impaired and in need of full-time custody and care.” That same day, the district court in Des Moines County entered its order discharging Cubbage from commitment under section 229A.10 and committing him to the Pomeroy Care Center pursuant to Iowa Code chapter 229 and the Cherokee County court’s November 16 order.
Before Cubbage began residing at the Pomeroy Care Center, the administrator and director of nursing at the care center met with CCUSO staff members to discuss *583 Cubbage’s history as a sex offender as well as his diagnosis of pedophilia and dementia. The CCUSO staff told the care center’s administrator that it was not likely Cubbage would be a risk. The administrator was not aware the CCUSO doctors had previously opined that Cubbage was a danger to others at the time he was committed to the care center. The administrator’s understanding was that Cubbage was “being transferred because his physical condition had advanced to the point where he could no longer participate in active treatment.” The director of nursing at the care center understood that Cubbage was a “child predator,” and CCUSO staff told- her that he would be “no risk at all” to “older, folks.” The parties discussed his access to children and the care center’s ability to monitor him in the presence of children.
On August 21, 2011, an eight-year-old child visiting the care center witnessed Cubbage sexually assaulting Gottschalk. On November 18, the State transferred Cubbage from the care center to the Newton Correctional Facility.
Gottschalk sued the care center for providing her care in a reckless and négligent manner. After Gottschalk’s death, her estate substituted itself as the plaintiff. The estate also sued the State for negligence. Specifically, the estate alleged the State was negligent because (1) it had a duty to “prepare and approve a safety plan to protect the residents” of the care center after Cubbage was placed there and (2) it had a duty to “inspect and determine whether or not appropriate safety precautions were being followed by the Pomeroy Care Center.” The estate also alleged the State decreased nursing home oversight thereby “intentionally causing an unacceptable risk of injury to the residents.”
The Pomeroy Care Center brought a cross-claim alleging negligence on the part of the State for contribution and indemnity. The care center - contended the State was negligent because (1) it failed to “properly supervise and monitor.the co-resident, Cubbage, pursuant to Court Order and Iowa code chapter 229;” (2) it represented to “Defendant prior to his admission that the co-resident, Cubbage, was no longer a risk or a threat to society;” and (3) it represented to “Defendant prior to his admission that the co-resident, Cub-bage, was no longer a risk or threat to elderly victims.”
The State moved for summary judgment on the estate’s and the care center’s causes of action. The State argued that once it discharged Cubbage from CCUSO, it owed no duty of care to supervise and monitor Cubbage, to create or supervise any safety plan related to Cubbage, or to inspect the Pomeroy Care Center and follow-up with regard to safety precautions. The State also argued Iowa Code section 669.14(4) prohibits the care center from suing the State based on the State’s alleged misrepresentations concerning Cubbage’s risk to other residents in the care center.
In its resistance to the State’s motion for summary judgment, the estate argued the State “did not inspect the Pomeroy nursing home to determine whether safety protocols were in place,” and the State had a “duty of care ... to warn the residents and assure that safety protocols were in place to protect the residents from harm and that a failure to do so would constitute negligence.”
The Pomeroy Care Center resisted the State’s motion by arguing the State negligently discharged Cubbage, the State acted negligently in failing to supervise and monitor Cubbage, and issues of material fact precluded summary judgment. The care center also requested an extension of time to respond to the State’s summary judgment motion pending a ruling on the estate’s motion to compel production of *584 documents filed June 19, 2014, and the estate’s motion to inspect court records filed June 23.
The district court granted the State’s motion, concluding that because Cubbage was unconditionally discharged from CCU-SO, the State had no statutory or common law duty to supervise, monitor, or approve a safety plan, and that “ [without the existence of a duty, any claim for negligence [by the Estate or the Pomeroy Care Center] must fail.” Further, the court held the doctrine of sovereign immunity prevented any claim of misrepresentation against the State pursuant to Iowa Code section 669.14(4). Finally, because the court’s ruling dismissed all claims against the State, it concluded the estate’s motion to compel discovery was moot.
The estate and Pomeroy appealed.[1] We transferred the case to the court of appeals, which affirmed the district court ruling. We granted the estate’s and Pom-eroy Care Center’s applications for further review.
II. Scope of Review.
We review a district court ruling on summary judgment for correction of errors at law. Sanon v. City of Pella, 865 N.W.2d 506, 510 (Iowa 2015). Summary judgment is appropriate when the moving party demonstrates “there are ‘no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.’ ” Id. (quoting Ne. Cmty. Sch. Dist. v. Easton Valley Cmty. Sch. Dist., 857 N.W.2d 488, 491-92 (Iowa 2014)). “A genuine issue of fact exists if reasonable minds can differ on how an issue should be. resolved. When a fact’s determination might affect the outcome of the suit, it is material.” Walker v. State, 801 N.W.2d 548, 554 (Iowa 2011) (citation omitted).
“[W]e examine the record in the light most favorable to the party opposing the motion for summary judgment” when determining if the moving party met its burden. Minor v. State, 819 N.W.2d 383, 393 (Iowa 2012). Based on the record before the district court, we must determine “whether there was a material fact in dispute and if not, whether the district court correctly applied the law.” Id. (quoting Robinson v. Fremont County, 744 N.W.2d 323, 325 (Iowa 2008)).
We also recognize that “questions of negligence or proximate cause are ordinarily for the jury” and “only in exceptional cases should they be decided as a matter of law.” Thompson v. Kaczinski, 774 N.W.2d 829, 832 (Iowa 2009) (quoting Clinkscales v. Nelson Sec., Inc., 697 N.W.2d 836, 841 (Iowa 2005)).
III. The Estate’s Appeal.
At the onset of this discussion, we note that the estate has not been consistent with its arguments and theories of recovery from the tort claim it filed through its appellate brief. We will only consider the issues raised by the estate in its appellate brief. In its brief, the estate makes three claims. They are set forth as follows:
All of the foregoing demonstrates that a reasonable person would be justified to believe that the residents of the Pomer-oy Care Center would be at foreseeable risk of harm by William Cubbage and that there existed a duty of care by the State not to release William Cubbage into a target rich environment. These facts would also establish a duty to warn the residents and assure that safety pro *585 tocols were in place to protect the residents from harm and that a failure to do so would constitute negligence.
A. Whether the State Had a Duty of Care Not to Release William Cubbage into a Target-Rich Environment. Before reaching the merits of this issue, we must first decide if the estate preserved error on this issue. We find the estate did not preserve error on this issue.
A party must ordinarily raise an issue in the district court and the district court must decide that issue before we may decide it on appeal. Meier v. Senecaut, 641 N.W.2d 532, 537 (Iowa 2002). The underlying objective of this rule is to ensure “orderly, fair[,] and efficient administration” of justice by preventing parties from presenting one case at trial and another on appeal. State v. Mann, 602 N.W.2d 785, 790 (Iowa 1999) (quoting State v. Tobin, 333 N.W.2d 842, 844 (Iowa 1983)). Thus, it serves the purpose of ensuring both opposing counsel and the district court receive notice of the basis for a claim at a time when corrective action is still possible. See State v. Johnson, 476 N.W.2d 330, 334 (Iowa 1991); see also State v. Milner, 571 N.W.2d 7, 12 (Iowa 1997).
In deciding whether a party has preserved error, the purposes of our error preservation rules guide us. Lee v. State, 815 N.W.2d 731, 739 (Iowa 2012); Mann, 602 N.W.2d at 790-91. Accordingly, “we recognize an exception to the general error-preservation rule when the record indicates that the grounds for a motion were obvious and understood by the trial court and counsel.” State v. Williams, 695 N.W.2d 23, 27-28 (Iowa 2005); In re Det. of Hodges, 689 N.W.2d 467, 470 (Iowa 2004). Generally, so long as a party timely brings the nature of the error claimed to the attention of the district court, error preservation does not turn on the thoroughness of counsel’s researching or briefing. Summy v. City of Des Moines, 708 N.W.2d 333, 338 (Iowa 2006), overruled in part on other grounds by Alcala v. Marriott Int’l, Inc., 880 N.W.2d 699, 708 & n.3 (Iowa 2016). Nonetheless, if the court does not actually rule on the claim asserted, a party must seek an expanded ruling to preserve it. State v. Webster, 866 N.W.2d 223, 231-32 (Iowa 2016).
In its ruling, the district court stated,
It is factually established that Mr. Cubbage had been unconditionally discharged from the CUSSO unit in November of 2010. This discharge was not “transitional” or “conditional.” Once discharged, the duty of the State to supervise or monitor Mr. Cubbage ended. “Discharge” is defined by Iowa Code 229A.2(3) as meaning “.... an unconditional discharge from the sexually violent predator program.” At that time, the State owed no duty to provide a “safety plan” as contemplated by Iowa Code 229A.8A(6) because of the unconditional nature of the discharge. Without the existence of a duty, any claim for negligence must fail. Further, this Court finds no common law duty as defined by prior case law covering the facts of this case. Simply stated, since Cubbage was unconditionally discharged from CUS-SO, there was no statutory or common law duty placed upon the State to supervise, monitor or approve a “safety plan” and absent a duty, Plaintiffs claims in this regard must be dismissed. See Minor v. State, 819 N.W.2d 383 (Iowa 2012); Leonard v. State, 491 N.W.2d 508 (Iowa 1992).
The district court did not rule on or consider any claim by the estate that the State had a duty of care not to release William Cubbage into a target-rich environment. The estate did not make this *586 claim in its petition or in its resistance to the State’s motion for summary judgment. The first time the estate raised this issue was in its appellate brief. We do not consider issues for the first time on appeal. Geisler v. City Council of Cedar Falls, 769 N.W.2d 162, 166 (Iowa 2009). Accordingly, we will not reach this issue because the estate failed to preserve error on the issue in this appeal.
B. Whether the State Had a Duty to Warn the Residents of the Dangers Cubbage Presented in Order to Protect the Residents from Harm. Again, before reaching the merits of this issue, we must first decide if the estate preserved error on this issue. The court of appeals found the estate did not preserve error on this issue. We disagree.
Here, the estate raised the issue of failure to warn the vulnerable residents of the Pomeroy Care Center in its resistance to the State’s motion for summary judgment. Thus, the court and the State had notice for the basis of this claim. In its order for summary judgment, the district court held that “[without the existence of a duty, any claim for negligence must fail,” and found no common law duty applied in this case. We find the district court contemplated the failure to warn claim raised by the estate in its resistance to the State’s motion for summary judgment, thus preserving the theory of negligent failure to warn for appeal.
The district court determined that once the court discharged Cubbage from CCUSO, the State owed no duty to warn Gottschalk of the dangers Cubbage posed. A negligence claim requires “the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.” Thompson, 774 N.W.2d at 834 (quoting Stotts v. Eveleth, 688 N.W.2d 803, 807 (Iowa 2004)). “Whether a duty arises out of a given relationship is a matter of law for the court’s determination.” Id.
Historically, we have considered three factors when determining whether a duty to exercise reasonable care exists: “the relationship between the parties, the foreseeability of harm, and public policy.” McCormick v. Nikkel & Assocs., Inc., 819 N.W.2d 368, 371 (Iowa 2012). We have not viewed these factors as “three distinct and necessary elements, but rather as considerations employed in a balancing process.” Thompson, 774 N.W.2d at 834. Ultimately, “whether a duty exists is a policy decision based upon all relevant considerations that guide us to conclude a particular person is entitled to be protected from a particular type of harm.” Id. (quoting J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C., 589 N.W.2d 256, 258 (Iowa 1999)).
In Thompson, we adopted the duty analysis of the Restatement (Third) of Torts: Liability for Physical & Emotional Harm, which provides that “the assessment of the foreseeability of a risk” is no longer part of the duty analysis, but is “to be considered when the [fact finder] decides if the defendant failed to exercise reasonable care.” Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist., 788 N.W.2d 386, 391 (Iowa 2010) (quoting Thompson, 774 N.W.2d at 835 (citing Restatement (Third) of Torts: Liab. for Physical Harm § 7 cmt. j, at 97-98 (Am. Law Inst., Proposed Final Draft No. 1, 2005))).
Turning our analysis to the Restatement (Third) of Torts, in Thompson we held that “[a]n actor ordinarily has a duty to exercise reasonable care when the actor’s conduct creates a risk of physical harm.” Id. (quoting Thompson, 774 N.W.2d at 834). Only “in exceptional cases” will this general duty of reasonable care not apply. Id. (quoting Thompson, 774 *587 N.W.2d at 835). “An exceptional case is one in which ‘an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases.’ ” Id. (quoting Thompson, 774 N.W.2d at 835).
The Restatement (Third) has addressed the issue of a defendant’s liability for the actions of a third party based on a special relationship with the person posing risks. Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 41, at 64-65 (Am. Law Inst. 2012). In relevant part, it provides,
(a) An actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship.
(b) Special relationships giving rise to the duty provided in Subsection (a) include:
[[Image here]]
(4) a mental-health professional with patients.
Id.[2] While an affirmative duty might exist pursuant to section 41 of the Restatement (Third), “a court may decide, based on special problems of principle or policy that no duty or a duty other than reasonable care exists.” Id. cmt. b, at 65; see also id. § 7(b), at 77 (Am. Law Inst. 2010).
Prior to our adoption of the Restatement (Third) in Thompson, we found a special relationship existed between a psychiatrist and a patient, giving rise to a duty to either control the behavior of the other person or to protect a third party. Leonard v. State, 491 N.W.2d 508, 510-11 (Iowa 1992). There, we stated, “that the risks to the general public posed by the negligent release of dangerous mental patients would be far outweighed by the disservice to the general public if treating physicians were subject to civil liability for discharge decisions.” Id. at 512. We then held that the duty of care did not apply to the general public. Id. In making this decision, “the principle that the scope of the duty turns on the foreseeability of harm to the injured person” guided our decision. Id. at 511. In Leonard, our analysis only addressed a psychiatrist’s duty to members of the general public, and we did “not decide what duty, if any, would attach to the discharge decision if the psychiatrist had reason to believe some particular person would be endangered by the patient’s release.” Id. at 512.
Before we analyze the facts in this ease under the Restatement (Third) and Leonard, we must first decide if a special relationship existed. In Leonard, the hospital made the decision to release the patient from its care. In this case, the State did not make the decision to release Cubbage from CCUSO or commit him to tlje Pom-eroy Care Center. The district court entered an order discharging Cubbage from CCUSO pursuant to Iowa Code section 229A.10.- In its order, the court acknowledged that it reviewed the motion to discharge and found good cause to discharge Cubbage from his civil commitment under chapter 229A. Implicit in the court’s finding was that the State could not “show beyond a reasonable doubt that [Cub-bage’s] mental abnormality or personality disorder remains such that [Cubbage] is likely to engage in predatory 'acts that *588 constitute sexually violent offenses if discharged.” See Iowa Code § 229A.10. Under the Code, the court was required to discharge him. Id.
Another district court held a hearing and committed him to the Pomeroy Care Center under Code section 229.13. The court stated its reason for the commitment was “due to his dementia and executive dysfunction, thus being a danger to [himself] and others.” “Dementia” is “the loss, usually progressive, of cognitive and intellectual functions, without impairment of perception and consciousness.” Dementia, Stedman’s Medical Dictionary (27th ed. 2000). Executive functions include “[higher order cognitive processes such as goal setting, planning, organization, adaptive responding, and self-monitoring.” John F. Clarkin et al., The Role of Psychiatric Measures in Assessment and Treatment, in Textbook of Psychiatry 73, 92-93 (Robert E. Hales, Stuart C. Yudofsky, Glen 0. Gabbard, eds., 5th ed. 2008). In other words, Cubbage was committed to the Pomeroy Care Center because his dementia made him unable to take care of himself.
The district courts made the ultimate decision to release Cubbage from CCUSO and commit him to the Pomeroy Care Center, not the State. The courts made their decisions after they considered the evidence before them. The courts reviewed the expert testimony and reports and decided the law required them to release Cubbage from CCUSO and commit him to the Pomeroy Care Center. The courts, in making their decisions, had the option of giving as much weight as they thought the expert testimony deserved. Crouch v. Nat’l Livestock Remedy Co., 210 Iowa 849, 851-52, 231 N.W. 323, 324 (1930). The courts could have rejected or accepted the expert testimony. Id. Furthermore, Iowa Code chapter 229 and 229A place the responsibility on the court to examine the evidence and not merely act as a rubber stamp of the expert testimony. See Jacobs v. Taylor, 190 Ga.App. 520, 379 S.E.2d 563, 566 (1989) (stating “this court will not read the statutory responsibility placed on a committing court ... as consisting merely of ‘rubberstamping’ the opinions of expert witnesses”). Although the court had the authority to release Cubbage from CCUSO with supervision, it chose not to. Iowa Code § 229A.9A. Instead, one court discharged Cubbage from CCUSO and another committed him to the Pomeroy Care Center. Neither the director nor any staff member of CCUSO had the authority to release or discharge Cubbage. Our courts discharged Cubbage. Accordingly, we find there was no special relationship to invoke section 41 of the Restatement (Third). Consequently, the district court was correct in finding the State had no duty to warn the residents.
C. Whether the State Had a Duty to Assure that Safety Protocols Were in Place to Protect the Residents from Harm. We just found there was no special relationship invoking section 41 of the Restatement (Third) to create a duty upon the State to warn Gottschalk of Cubbage’s alleged dangerous propensities. For the same reasons that the State did not owe a duty to warn Gottschalk, we find the State did not have a duty to assure that safety protocols were in place to protect the residents from harm.
D. Whether the District Court Erred in Finding the State Immune from Liability Under Iowa Code Section 669.14. The State claims as an affirmative defense it is immune from liability under the Iowa Tort Claims Act. The law provides,
The provisions of this chapter shall not apply with respect to any claim against the state, to:
*589 [[Image here]]
4. Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.
Iowa Code § 669.14(4).
The record does not disclose any representations made to Gottschalk by the State. We have also found the State did not have a duty to do so. Accordingly, we need not address this issue as to the estate.
E. Conclusion. For all the reasons stated above, we find the district court was correct in granting the State’s motion for summary judgment against the estate.
IV. The Pomeroy Care Center’s Appeal.
The Pomeroy Care Center also has not been consistent with its arguments and theories of recovery from the petition it filed through its appellate brief. We will only consider the issues raised by the care center in its appellate brief. In its brief, the care center makes five arguments. First, it argues the district court erred in finding as a matter of law that the State owed no duty of care to the care center. Next, it argues a genuine issue of material fact exists regarding whether the State acted negligently in discharging Cubbage from CCUSO. Third, it argues a genuine issue of material fact exists regarding whether the State acted negligently in performing its role in the civil commitment of Cubbage to the Pomeroy Care Center under Iowa Code chapter 229. Fourth, it argues a genuine issue of material fact exists regarding whether the State acted negligently in failing to supervise and monitor Cubbage. Lastly, it argues the district court erred in granting the motion for summary judgment when a motion to compel was pending.
A. Whether the District Court Erred in Finding as a Matter of Law that the State Owed No Duty of Care to the Care Center. The crux of the care center’s argument on this issue is that because the State had a special relationship with Cub-bage, the State had a common law duty to accurately warn the care center of Cub-bage’s dangerous propensities. First, we doubt this issue is preserved. Although raised in its petition, the care center did not argue this issue in its resistance to the State’s motion for summary judgment. Thus, we do not believe the district court considered the issue or ruled upon it.
Moreover, in its brief, the care center relies on the “Duty to Third Parties Based on Special Relationship with Person Posing Risks” now contained in section 41 of the Restatement (Third) to support its argument. Factually, section 41(b)(2) of the Restatement (Third) appears to support the care center’s argument because the representations made by the State to the care center were made while Cubbage was in the State’s custody. However, we need not decide if section 41(b)(2) is applicable to the care center’s claim because at the time any representations were made, the State could not release Cubbage from its custody, only a court could.
As we previously found, a special relationship does not exist between the State and Cubbage when the courts discharged him from CCUSO and committed him to the care center. The courts made the decision to discharge Cubbage, not the State. Thus, even if the care center had preserved this issue, it is without merit.
B. Whether a Genuine Issue of Material Fact Exists Regarding Whether the State Acted Negligently in Discharging Cubbage from CCUSO. The care center preserved this issue. However, the undisputed facts show the court made the *590 final decision to discharge Cubbage. The court was not required to discharge him. Again, our courts are not rubber stamps, but they are deliberative bodies making decisions based upon the evidence before them. The care center cites no authority requiring the State to present its case to the court differently at the discharge hearing. Thus, the district court was correct in finding no duty, and therefore, no genuine issue of material fact exists on this issue.
C. Whether a Genuine Issue of Material Fact Exists Regarding Whether the State Acted Negligently in Performing Its Role in the Civil Commitment of Cubbage to the Pomeroy Care Center Under Iowa Code Chapter 229. The same reasoning and logic applies to this argument as we applied to the issue concerning whether the State acted negligently in discharging Cubbage from CCUSO. Thus, the district court was correct in finding no duty; therefore, no genuine issue of material fact exists on this issue.
D. Whether a Genuine Issue of Material Fact Exists Regarding Whether the State Acted Negligently in Failing to Supervise and Monitor Cubbage. The resolution of this issue depends on the applicability of the “Duty to Third Parties Based on Special Relationship with Person Posing Risks” now contained in section 41 of the Restatement (Third). As we previously found, the district court discharged Cubbage, not the State. Therefore, the State has no duty based upon a special relationship. Thus, the district court was correct in finding no duty; therefore, no genuine issue of material fact exists on this issue.
E. Whether the District Court Erred in Granting the Motion for Summary Judgment When a Motion to Compel Was Pending. We agree with the court of appeals that we need not reach this issue having found no duty existed between the State and the care center.
F. Conclusion. For all the reasons stated above, we find the district court was correct in granting the State’s motion for summary judgment against the care center.
V. Disposition.
We find under the issues preserved that no duty existed as a matter of law between the State and Gottschalk or the State and the Pomeroy Care Center. Accordingly, we affirm the decisions of the court of appeals and the district court.
DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.
Cady, C.J., and Appel, J., join this opinion. Waterman and Mansfield, JJ., join this opinion but also concur specially. Hecht, J., files a dissent in which Zager, J., joins. Zager, J., files a separate dissent in which Hecht, J., joins.

. The district court’s summary judgment dismissed only the State from the case and the action remains pending as to defendant Pom-eroy Development. We granted interlocutory appeal.

. “Section 315 of the Second Restatement of Torts stated the general proposition that there is no affirmative duty to control the conduct of a third party from causing harm to another.” Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 41 cmt. a, at 65. Section 41 of the Restatement (Third) "replaces §§ 315(a), 316, 317, and 319 and includes an additional relationship creating an affirmative duty, that of mental health professionals and patient.” Id.