# IN THE COURT OF APPEALS OF IOWA

No. 17-1001
Filed January 23, 2019


**SUSAN K. MORRISON, EXECUTOR ON BEHALF OF THE ESTATE OF MAX L. MORRISON, SUSAN K. MORRISON, EXECUTOR ON BEHALF OF SUSAN K. MORRISON, SUSAN K. MORRISON, EXECUTOR ON BEHALF OF BRIAN L. MORRISON AND MICHAEL S. MORRISON,**
     Plaintiffs-Appellants,

**vs.**

**GRUNDY COUNTY RURAL ELECTRIC COOPERATIVE,**
     Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Tama County, Mitchell E. Turner, Judge.


        Plaintiffs in negligence action appeal a jury verdict finding the rural electric cooperative at fault after a plane crash but finding no causation. **AFFIRMED.**


        John R. Walker Jr. of Beecher, Field, Walker, Morris, Hoffman & Johnson, PC, Waterloo, for appellants.

        Joseph G. Gamble and Gregory R. Brown of Duncan, Green, Brown & Langeness, PC, Des Moines, for appellee.


        Heard by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

The plaintiffs[1] allege the Grundy County Rural Electric Cooperative (GCREC) was liable for the death of Max Morrison, a passenger in an airplane that crashed after striking a power line. A jury found the GCREC acted negligently but its negligence did not cause the crash. The Morrisons raise numerous grounds for reversal. We resolve most of their claims on error preservation or harmless error. We reach the merits of one issue—finding the district court properly instructed the jury on the GCREC's scope of liability. Accordingly, we affirm.

## I. Facts and Prior Proceedings.

In November 2012, a plane piloted by William Konicek and carrying passenger Max Morrison crashed into a farm field outside Clutier in Tama County. The accident occurred when the front wheels of the plane—a "light sport aircraft"—tangled with electrical wires suspended on poles above the land. Konicek died at the scene. Morrison was able to walk out of the wreckage but suffered severe burns. He spent forty-one days in the burn unit at the University of Iowa Hospitals and Clinics before succumbing to his injuries.

To explain Konicek's choice of this landing strip, we must turn the clock back to 1984. Then-landowner Richard Merkel sat on the GCREC board. He was a hobby pilot and asked the GCREC to bury the power lines bordering his property to permit safe access to a grass airstrip he kept alongside the road. He created and maintained the airstrip by leveling the land and mowing the grass short. Acceding to Merkel's wishes, the GCREC buried the power lines under the road.

---

[1] The plaintiffs are Max Morrison's estate; his wife, Susan; and adult sons, Brian and Michael. We will refer to the family collectively as the Morrisons in this opinion.

The 1984 project's permit application states, "Reason for [change] is removing overhead line for clearance for Richard Merkel airstrip." Merkel and Konicek were childhood friends. They enjoyed building and flying planes together.

In 1989, Merkel divorced, and the decree awarded the property to his ex-wife, Ila Yung.[2] At trial, Yung testified that during their marriage the couple owned a plane and used their personal landing strip for about five years. She testified the airstrip was not for public access, but several friends did use it on occasion. She said Konicek landed there twice. In 1991, Yung enrolled the land in the United States Department of Agriculture Conservation Reserve Program (CRP). The CRP prohibits the use of encumbered land for crops and other purposes, including aviation.

Yung testified the strip was last used for aviation in 1989. Since then, no one had asked her permission to land on the property and she was not aware of any aircraft doing so.[3] Had anyone asked permission, Yung testified she would have said no. At the time of the crash, the land was covered in switch grass, which Yung estimated could grow three feet tall. But in the summer of 2012, Yung obtained "emergency haying" permission from CRP officials. Yung had the grass mowed in August, but testified it had grown by the time of the crash in November. The hangar where Merkel previously housed his plane now stored hay.

---

[2] Yung testified she was born on that property in 1937 and grew up there. She and Merkel spent about twenty-five years away serving in the military. In 1980, they returned and purchased the land from her parents. She lived on the property continuously since then.
[3] She testified, based on the location of her house, she would hear anyone trying to land: "It would be pretty loud."

For two decades after the GCREC buried the power lines in 1984, customers complained increasingly of power outages.[4] In 2008, the GCREC applied for federal funds to improve service on its nearly one hundred miles of electrical wires, including those adjacent to the Yung property. The GCREC retired the old power lines and installed new ones suspended above ground on thirty-foot poles. As part of the project, the GCREC was required to obtain numerous permits and approvals.[5] The GCREC successfully obtained each one—except for a permit from Tama County for the land adjacent to the Yung property, required under Tama County Ordinance #IV.4. At trial, the GCREC operating manager admitted not seeking this permit. Despite not obtaining the permit, the GCREC completed the project in May 2012, several months before Morrison's fatal crash.

In November 2014, the Morrisons sued the GCREC[6] for negligence in Max's death. After extensive pretrial litigation, the claims went before a jury. For eight days, the parties offered evidence on the GCREC's alleged duties, the condition and status of the land where the crash occurred, and the comparative fault of Konicek and Morrison. At the close of the plaintiffs' case and again at the close of all evidence, the Morrisons unsuccessfully moved for directed verdict.

---

[4] Both the current and retired operations managers for the GCREC testified buried electrical lines are more prone to outages than above-ground lines.

[5] The current operating manager testified the improvement project actually consisted of thirty-five separate subprojects, each one requiring an individual permit. The GCREC obtained thirty-four permits—the one pertaining to this subproject "was overlooked." The operating manager testified, "I do have a permit that I filled out, I signed, I dated. Normally I would have e-mailed this to the county. I made a mistake or forgot it. I don't know what I did . . . but it was an oversight on my part."

[6] The Morrisons originally named several other defendants in the action but dismissed them before trial.

The court instructed the jury on negligence, the GCREC's scope of liability, the comparative fault of Konicek and Morrison, and damages. The jury deliberated for less than three hours, asked no questions, and rendered a unanimous verdict.

The verdict form set out these questions:

> **Question No. 1:** Was Grundy County Rural Electric Cooperative at fault?
> Answer "yes" or "no."
> ANSWER: _____ [If your answer to Question No. 1 is "no," do not Answer any further questions.]

> **Question No. 2:** Was Grundy County Rural Electric Cooperative's fault a cause of any damage to the Plaintiffs? Answer "yes" or "no."
> ANSWER: _____ [If your answer to Question 2 is "no," do not answer any further questions.]

(Brackets included in original.) On the fault question, the jury answered, "Yes." The jury did not specify on which of the four possible grounds set out in Instruction No. 14 it found the GCREC at fault. On the causation question, the jury answered, "No." As commanded by the instructions, the jury did not answer any further questions directed at the scope of the GCREC's liability, the comparative fault of Konicek or Morrison, or the amount of damages. The court gave no special interrogatories, and the parties did not poll the jury after its verdict.

The Morrisons filed a motion for judgment notwithstanding the verdict (JNOV). The court denied the motion and entered judgment for the GCREC. The Morrisons now appeal—raising numerous claims. In response, the GCREC contends we need not address any error the Morrisons allege concerning fault or comparative fault because any error would be harmless. The GCREC also raises several error-preservation challenges.

## II. Scope and Standards of Review

If we were to reach the merits of the issues raised, we would apply the following standards of review.  For rulings on motions for directed verdict, we review for correction of legal error.  *Easton v. Howard*, 751 N.W.2d 1, 5 (Iowa 2008).  We check most evidentiary rulings for an abuse of discretion, meaning we assess whether the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.  *See Heinz v. Heinz*, 653 N.W.2d 334, 338 (Iowa 2002).  And we review decisions concerning jury instructions for correction of legal error when there is not a discretionary component.  *Andersen v. Khanna*, 913 N.W.2d 526, 536 (Iowa 2018).  "Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions."  *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) (quoting *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994)).  "[E]rror in giving or refusing jury instructions does not merit reversal unless it results in prejudice to the defendant."  *Struve v. Payvandi*, 740 N.W.2d 436, 439 (Iowa 2007).

## III. Threshold Issue: Harmless Error on Fault and Comparative Fault

Given the jury's finding that the GCREC acted negligently but that its negligence did not cause the plane crash, we face a gatekeeping dilemma—whether to reach the substance of the Morrisons' claims that bear on fault or comparative fault.  The GCREC argues any allegations related to its negligence, even if meritorious, were cured when the jury ultimately found it *was* at fault.  In the GCREC's view, because the jury reached a favorable result for the Morrisons on fault, any alleged error impacting that aspect of the verdict was harmless and

need not be addressed on appeal. The GCREC also contends alleged errors that bear on comparative fault are harmless because once the jurors decided the GCREC's negligence was not a cause of the crash, the instructions did not permit them to consider the relative negligence of Konicek and Morrison.

To analyze these harmless-error claims, we look to the mechanics of the jury's negligence finding. To prevail, the Morrisons had to show the GCREC had a duty to conform to a standard of conduct and failed to do so. *See Estate of Gottschalk by Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 586 (Iowa 2017). Jury Instruction No. 14 allowed the jury to find the GCREC was negligent in one or more of four particulars:

> 1. GCREC failed to bury the powers lines "to eliminate the risk created by their proximity to the . . . airstrip";
> 2. GCREC failed to "warn members of the aviation public" about putting up the wires;
> 3. GCREC failed to place warning markers on the lines "designed to warn aircraft pilots and passengers" about the lines "in proximity to the . . . airstrip," and/or
> 4. GCREC failed to obtain a permit from the Tama County Board of Supervisors before constructing the overhead power lines.

The first three grounds are predicated on a duty the GCREC may have owed users of the airstrip or of the nearby airspace. In contrast, the fourth ground does not involve a duty to the aviation public or to pilots and passengers. It addresses only the legal obligation to obtain the correct permit from the county before embarking on a public utility project. The record does not reflect which ground or grounds the jury embraced. And neither party requested a special interrogatory to unmask the jury's thinking.

Generally, we construe verdicts liberally "to give effect to the intention of the jury and to harmonize the verdicts if it is possible to do so."[7] *Holdsworth v. Nissly*, 520 N.W.2d 332, 337 (Iowa Ct. App. 1994) (citing *Hoffman v. Nat'l Med. Enters., Inc.*, 442 N.W.2d 123, 126 (Iowa 1989)). The Morrisons do not dispute that substantial evidence supported the jury's findings. Nor do they suggest the two verdicts are inconsistent. Instead, they contend (1) legal errors prejudiced their case on fault, despite receiving a favorable verdict on that element, and (2) evidence of comparative fault influenced the jury's decision on causation.

The GCREC rests its argument on this longstanding tenet: "When a court denies a party's motion for a directed verdict and the jury finds in that party's favor on the issue upon which the party requested a directed verdict, there can be no prejudice to the moving party in light of the jury's verdict." *See Crow v. Simpson*, 871 N.W.2d 98, 107–08 (Iowa 2015) (citing *Spry v. Lamont*, 132 N.W.2d 446, 449 (Iowa 1965)); *see also Brant v. Bockholt*, 532 N.W.2d 801, 803 (Iowa 1995) ("This court has consistently held that errors against a party are cured by a verdict in that party's favor unless the error was prejudicial with respect to the amount of recovery."); *Edgren v. Scandia Coal Co.*, 151 N.W. 519, 524–25 (Iowa 1915) ("The plaintiff having finally won the verdict, such rulings of the court, even if erroneous, were necessarily nonprejudicial."); *Thew v. Miller*, 36 N.W. 771, 772 (Iowa 1888).

---

[7] Although this issue was not raised on appeal, the verdicts can be reconciled. The jury could have found, as a factual matter, the crash site was not an airstrip. Thus, the GCREC would have no duty to warn pilots of the electrical lines but was at fault only for failure to obtain the required permit, an error that former and current GCREC employees admitted at trial. Because sufficient evidence supported a finding the GCREC would have obtained the permit anyway, the verdict that its failure to do so was not a cause of the crash would be supported by substantial evidence. *See Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014).

In *Crow*, the plaintiff alleged he was injured because a contractor was negligent in not adequately warning passersby of construction equipment parked on the roadway. 871 N.W.2d at 104. The jury found the contractor was negligent but that negligence was not a cause of Crow's injury. *Id.* Our supreme court upheld the verdicts. *Id.* at 105–07.

The Morrisons allege *Crow* is not controlling because in their motion for directed verdict they asked only for a finding that the GCREC failed in a duty to warn of the overhead power lines. Yet the instructions allowed the jury to find the GCREC negligent on any one of four grounds, not all of which involved a duty to warn, and the general verdict obscured the basis of the jury's decision. The Morrisons urge us to consider the negligence grounds charged in the motion.

Our case law directs that errors bearing on fault are remedied by a favorable verdict, unless they go to the amount of recovery, which is not the case here. *See Brant*, 532 N.W.2d at 803. In addition, like the Morrisons, Crow argued the district court erred in not granting his motion for directed verdict on a negligence per se theory, and our supreme court still determined he was not prejudiced. *See Crow*, 871 N.W.2d at 104. Applying the *Crow* rule, it does not matter on which basis the jury found the GCREC negligent—we can presume the jury found one or all grounds met. The jury sided with the Morrisons on the question of fault, and any errors going to a specific ground did not result in prejudice. Accordingly, we need not dissect the merits of the claims bearing on fault.[8]

---

[8] As appellants, the Morrisons bear the burden of proving each alleged error on the record made at trial. The ambiguity about what ground or grounds of negligence the jury found precludes them from showing how they were prejudiced by the alleged errors. Special

We reach a similar result on the Morrisons' claims regarding the comparative fault evidence. Where a jury finds no causal fault and, per the instructions, does not answer questions on comparative fault, any alleged error regarding comparative fault is harmless. *See DeMoss v. Hamilton*, 644 N.W.2d 302, 307 (Iowa 2002).

Still, the Morrisons insist the comparative fault evidence influenced the jury's verdict on causation. It is true the GCREC's case focused on comparative fault. Particularly contentious was evidence the pilot, Konicek, had bipolar disorder and may have experienced a manic episode before the crash. But to accept the Morrisons' position would be to abandon the deference accorded jury findings. *See Holdsworth*, 520 N.W.2d at 337. Jury Instruction No. 14 and Question No. 2 asked whether the GCREC's fault was *a* cause of damage to the Morrisons, not the *sole* cause or a *major* cause. The jury answered no. We presume juries follow their instructions. *Kinseth v. Weil-McLain*, 913 N.W.2d 55, 73 (Iowa 2018). We need not decide the merits of the comparative-fault issues.

## IV. Analysis

### A. Duty to Warn

**Error Preservation**. The Morrisons contend the district court should have found as a matter of law that the GCREC had a duty to warn the public of the power lines surrounding the airstrip. The Morrisons allege they preserved error on this claim by raising it in their motion for partial summary judgment, which they renewed with their motion for directed verdict at trial. The GCREC contests error

---

interrogatories would have offered greater clarity, but appellants cannot now profit from the ambiguity.

preservation, claiming the Morrisons did not renew their request with sufficient specificity when seeking a directed verdict nor did they mention the duty-to-warn in their JNOV motion.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "[A] motion for judgment notwithstanding the verdict serves to afford the district court an opportunity to correct any error in failing to direct a verdict." *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 767 (Iowa 2002). We confine our review to those issues raised in the motion for directed verdict that were raised again after the jury reached its verdict. *See id.* "Error must be raised with some specificity." *Pavone v. Kirke*, 801 N.W.2d 477, 487 (Iowa 2011).

In their motions for summary judgment and directed verdict at the close of their evidence, the Morrisons argued the GCREC had a duty to warn members of the aviation public about the overhead power lines. We find plaintiffs' counsel was sufficiently specific in arguing for a directed verdict, urging that the GCREC had "a duty to mark the line and that wasn't done." The district court then ruled, "There is clearly evidence in this record from which a reasonable jury could conclude there was not a duty owed to either Mr. Morrison or Mr. Konicek by the [GCREC]."

But in their JNOV motion, the Morrisons acknowledged the jury decided the GCREC was at fault but caused no damages—without revisiting their request for the court to find a duty to warn as a matter of law. Because they did not renew that argument in the JNOV motion, the district court did not address whether the verdict was supported. We have no ruling to review.

**Harmlessness**. Even if the Morrisons had preserved error, the duty-to-warn question was allayed by the fault verdict. For the reasons articulated above, the Morrisons cannot show prejudice when they received a favorable verdict. They maintain had the district court directed a verdict that the GCREC had a duty to warn the aviation public, the jury would have come to a different conclusion as to causation. But both issues were properly submitted as jury questions, and the split verdict must stand.

**B. Evidence of Konicek's Bipolar Disorder.**

**Error Preservation**. The Morrisons assert the district court abused its discretion in allowing the GCREC to present evidence that the pilot, Konicek, had been diagnosed with bipolar disorder. We will assume without deciding that the Morrisons properly preserved this issue for review.

**Harmlessness**. The evidence of Konicek's mental health did not have any bearing on whether the GCREC's negligence was a cause of the crash. Instead, the disputed evidence went to the comparative fault of Konicek and Morrison. As noted above, because the jury stopped with the causation question, the Morrisons cannot show prejudice from the comparative fault evidence.

**C. Jury Instructions.**

The Morrisons dispute several jury instructions, including six instructions given by the district court and two instructions the court declined to give.

### 1. Instruction No. 36: Cause.

**Error Preservation.** First, they assert Jury Instruction No. 36 wrongly stated the law and the court should have given their proposed instruction that more

closely followed the language of the Iowa Civil Jury Instructions.[9] The GCREC argues a failure to preserve error because the Morrisons did not object to the cause instruction when they had the chance to do so.

The Morrisons contend it was sufficient to submit their own proposed instructions. We disagree. "When instructions are not objected to, they become 'the law of the case.'" *In re Estate of Workman*, 903 N.W.2d 170, 175 (Iowa 2017). Grounds for objection must be made "in writing or dictated into the record." Iowa R. Civ. P. 1.924. The district court submitted proposed instructions and gave the parties ample time to object. Without objecting to the court's proposals, the Morrisons did not preserve error by submitting their own proposed instructions. *See Bauer v. Cole*, 467 N.W.2d 221, 224–25 (Iowa 1991). Accordingly, we decline to reach the merits of this issue.

### 2. Instructions Nos. 20 and 21: Comparative Fault.

**Harmlessness.** The Morrisons object to the instructions on comparative fault. Because the jury did not reach the question of comparative fault, and for the reasons stated above, we will not address this issue.

### 3. Instruction No. 30: Open and Obvious Hazard.

**Harmlessness.** The Morrisons also allege the evidence was insufficient to instruct the jury on open and obvious hazards. Instruction No. 30 advised, "[T]he defendant had no duty to warn another of any hazardous or dangerous conditions

---

[9] Instruction No. 36 [defining cause]

The conduct of a party is a cause of damage when it is a substantial factor in producing damage and when the damage would not have happened except for the conduct.

"Substantial" means the party's conduct has such an effect in producing damage as to lead a reasonable person to regard it as a cause.

which are open and obvious." The instruction relates to the GCREC's duty—an issue on which the jury rendered a verdict favorable to the Morrisons. Accordingly, as discussed above, the error alleged was harmless.

### 4. Instructions No. 31 and No. 32: Scope of Liability.

The Morrisons contend the district court erred in giving Instructions No. 31 and No. 32 on scope of liability because the court should have determined as a matter of law that Max's death fell within the scope of the GCREC's liability.

Instruction No. 31 read:

> The Defendant is not liable as an insurer, and reasonable care does not require such precautions as will absolutely prevent injury or render accidents impossible.
> A person acts negligently if the person does not exercise reasonable care under all the circumstances. Primary factors to consider in ascertaining whether the person's conduct lacks reasonable care are the foreseeable likelihood to the Defendant at the time the Defendant acted in June of 2012 that the Defendant's conduct will result in harm, the foreseeable severity at the time the Defendant acted of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm.

Instruction No. 32 read:

> If you find that the Plaintiffs have proven the Defendant was negligent, you then must decide whether the injuries sustained by Max Morrison and his death are within the scope of the Defendant's liability. The injuries sustained by Max Morrison and his death are within the scope of Defendant's liability if his injuries and death arose from the same general types of danger that the Defendant should have taken reasonable steps to avoid.
> Consider whether repetition of Defendant's conduct makes it more likely the harm that Max Morrison suffered would happen to another. If not, the harm is not within the scope of Defendant's liability.

A related verdict form asked:

**Question No. 3:** Was the harm suffered by Max Morrison within the scope of Grundy Rural Electric Cooperative's liability? Answer "yes" or "no."

Answer: _____ [If your answer to Question No. 3 is "no," do not answer any further questions.]

(Brackets in original.) The jury did not answer, having stopped as directed with question No. 2.

Because Instruction No. 31 defines negligence and the jury found the GCREC was negligent, the Morrisons cannot show they suffered prejudice from the giving of that instruction. *See Struve*, 740 N.W.2d at 439 ("[E]rror in giving or refusing jury instructions does not merit reversal unless it results in prejudice . . . ."). But Instruction No. 32 and Question No. 3 relate to causation—a question on which the jury rendered a verdict unfavorable to the Morrisons. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 836–39 (Iowa 2009) (adopting the Restatement (Third) of Torts and clarifying the role of the scope of liability). Instructing on scope of liability had the potential to influence the jury's causation determination, so we must address the merits of the Morrisons' claim.

**Merits.** The Morrisons argue the district court should have determined as a matter of law that Max's fatal injuries were a foreseeable consequence of the failure to warn the aviation public about the power lines, and thus, fell within the GCREC's scope of liability.

Generally, "[a]n actor's liability is limited to those harms that resulted from the risks that made the actor's conduct tortious." Restatement (Third) of Torts: Phys. & Emot. Harm § 29 (2010). Our supreme court explained "[t]he scope-of-liability issue is fact-intensive as it requires consideration of the risks that made the actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks." *Thompson*, 744 N.W.2d at 838.

Here, the district court properly submitted the scope-of-liability question to the jury. Again, the key fact in dispute was the crash site status. If it remained an airstrip, that status triggered both a duty to warn and a foreseeable risk to the aviation public from a breach of that duty. The Morrisons were not entitled to a directed verdict on the duty to warn, and the same conflicting evidence generated a jury question on whether the harm fell within the GCREC's scope of liability.

### 5. Proposed Jury Instructions.

**Harmlessness**. The Morrisons next contend the district court erred in declining to give two proposed instructions—one on electrical utilities having a higher duty of care and another on negligence per se for the GCREC's failure to obtain a permit under the Tama County ordinance. Both proposed instructions addressed fault, and, therefore, the Morrisons cannot show prejudice from their absence. *See Struve*, 740 N.W.2d at 439.

### D. Advanced Rulings.

**Error Preservation**. The Morrisons filed a motion in limine requesting "advanced rulings" on four issues: (1) that the power lines constituted a public nuisance; (2) that the GCREC was estopped from arguing the crash site was not an airstrip; (3) that the GCREC had no legal authority to place the electrical lines aboveground; and (4) to exclude evidence regarding the site's CRP status. The GCREC contends the Morrisons did not preserve error on these claims. We agree that by not pursuing these issues beyond the pretrial ruling, the Morrisons failed to preserve them for appeal.

**AFFIRMED.**