# IN THE COURT OF APPEALS OF IOWA

No. 18-1206
Filed August 7, 2019

**KRISTIN R. BROSNAN,**
     Plaintiff-Appellant,

**vs.**

**STAN WOODMAN and MYRA WOODMAN d/b/a ARAGON TAP,**
     Defendants-Appellees.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi Wittig, Judge.

A patron injured in a fall from a barstool appeals the grant of summary judgment for the tavern owners on her negligence action. **AFFIRMED.**

Joey T. Hoover of Hoover Law Firm P.L.L.C., Epworth, for appellant.

Martha L. Shaff and Brandon W. Lobberecht of Betty, Neuman & McMahon, P.L.C., Davenport, for appellees.

Considered by Vaitheswaran, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Kristin Brosnan appeals the district court's grant of summary judgment in her negligence action against Aragon Tap and Stan and Myra Woodman.[1] Because the court properly relied on video evidence in determining the record revealed no genuine issue of material fact, we affirm.

## I.    Facts and Prior Proceedings

In late July 2014, Brosnan went to Aragon Tap for drinks with a friend. She gravitated to her "usual place" near the kitchen—choosing to sit on a barstool with a back.[2] While there, she drank Bud Light and shots of cinnamon schnapps. She stepped outside a few times to smoke cigarettes but always returned to the same seat. She recalls being at the bar for about an hour and a half before her fall. In an interrogatory, Brosnan alleges, while seated, she leaned back to stretch her legs. As she did so, she claims the seat back reclined though it was "not supposed to recline." In her words, "[N]ext thing here I am falling backwards." She reported hitting the back of her head on the floor. Other patrons surrounded her and one of the regulars called for medical assistance. Brosnan sustained serious injuries to her neck[3] and could no longer work.

Aragon Tap does not dispute Brosnan sustained injuries while in the bar. But the owners supplied security-video footage of the bar's interior at the time of her fall that contradicts part of her story. The video exhibit shows a person

---

[1] We will call the defendants, collectively, Aragon.

[2] Brosnan was wearing a medical walking boot on her left leg and using a cane as the result of a previous injury.

[3] Medical records show she suffered a closed fracture to vertebrae C5 and C6 and a "hangman's fracture" to vertebrae C2 and C3. She underwent surgery at the University Hospitals & Clinics in Iowa City.

matching Brosnan's description sitting on the stool she identified as hers. That person doubles over and then falls forward toward the bar. The nearly two hours of footage shows no person falling backward from a stool. And Brosnan agrees she was the only person who fell in Aragon Tap on July 30, 2014.

Despite those documented facts, Brosnan still denies she was the person depicted falling in the video. But she could not explain the video evidence, which the district court found uncontroverted.[4] In fact, Aragon Tap submitted an affidavit from David Herrig, a security expert, who stated it was impossible to alter or partially delete any part of the security video without deleting all of the footage. He also swore the exhibit was "a true and accurate copy of the video footage recorded by the Aragon Tap's security cameras on July 30, 2014."

Brosnan alternatively claims, even if the video does portray her falling forward, the direction she fell is irrelevant to her negligence claim. To show Aragon Tap's negligent maintenance of the stool, Brosnan offered a "barstool evaluation report" by Jason Sanders. Sanders's written report found the stool had been improperly repaired in the past. Sanders opined the stool's age and dilapidated condition signaled "a very high risk of failure." But Sanders did not report having viewed the surveillance video. And when Aragon Tap called Sanders for a deposition, he did not appear.

Brosnan sued Aragon Tap, alleging the bar was negligent in maintaining its bar stools. According to Brosnan, because of Aragon Tap's negligence, she fell backward and sustained her injuries. Aragon Tap sought summary judgment,

---

[4] The district court determined: "There is no question of fact that she is the person seen in the video."

citing the video evidence to bolster its position Brosnan could not prove she was injured after falling backward on a negligently-maintained barstool.

The district court acknowledged Aragon Tap's barstools "were as ancient as the Egyptian Pyramids." But the court also relied on the video to determine Brosnan fell forward—so a barstool with a defective back could not have caused her injuries. The district court granted summary judgment in favor of Aragon Tap and dismissed Brosnan's action. Brosnan appeals.

## II.     Scope of Review

"We review orders granting summary judgment for correction of errors at law." *Banwart v. 50th Street Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). Summary judgment is properly granted "if the [record] shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "A genuine issue of fact exists if reasonable minds can differ on how an issue should be resolved." *Banwart*, 910 N.W.2d at 544 (quoting *Estate of Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 584 (Iowa 2017)). A fact is material if it might affect the outcome of the suit. *Id.*

In determining whether a genuine issue of fact exists, we examine the record in the light most favorable to the nonmoving party. *Id.* at 545. In deciding a motion for summary judgment, the district court must not weigh the credibility of the arguments or evidence offered by the parties. *Frontier Leasing Corp. v. Links Eng'g, LLC*, 781 N.W.2d 772, 776 (Iowa 2010). If reasonable minds could disagree about the conclusions that can be drawn from the evidence, the court should not grant summary judgment. *Id.* at 775–76.

A jury ordinarily decides questions of negligence and proximate cause; only in exceptional cases should they be decided as a matter of law. *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009). But if a plaintiff cannot provide sufficient evidence to generate a fact question on each element of negligence, the district court need not submit the case to the jury. *Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014).

### III. Analysis

To show Aragon Tap's negligence, Brosnan must prove four elements: (1) existence of a duty, (2) breach of that duty, (3) causation, and (4) damages. *See Vossoughi v. Polascheck*, 859 N.W.2d 643, 654 n.6 (Iowa 2015). Brosnan's appeal focuses on one element—causation. The court accepted Brosnan's contention Aragon Tap did not maintain the barstool but disagreed that poor maintenance caused her fall.

We determine causation by examining Aragon Tap's scope of liability. *See Thompson*, 774 N.W.2d at 839. Scope of liability limits Aragon Tap's accountability to the risks it actually assumed in being negligent. *See id.* at 838. We apply a "but-for" test. *Garr*, 846 N.W.2d at 869. If, but for Aragon Tap's conduct, Brosnan's injuries would not have occurred, then Aragon Tap is liable. *See* Dan B. Dobbs, *The Law of Torts* § 168, at 409 (2000). To avoid summary judgment, Brosnan needed to provide evidence of this but-for connection between Aragon Tap's maintenance of the stool and her fall.

Brosnan claims she satisfied the causation requirement by offering her own testimony and an expert's written report on the offending barstool. She further

argues the district court impermissibly weighed the evidence by giving more credit to the video than her testimony or Sanders's report.

### A.      Reliance on Video Exhibit

In her main objection to the grant of summary judgment, Brosnan claims the district court should not have discounted her version of events based on the video exhibit.  The district court rejected Brosnan's claim the condition of the barstool was the cause of her injuries noting, "[T]he video shows the barstool did not come apart at the backrest nor did it fall over."  Brosnan argues the court should have reserved those credibility determinations for the jury.

Aragon Tap defends the district court's reliance on the video, asserting Brosnan's recollection that she fell backwards from the barstool is "directly refuted by the video footage."  Aragon Tap cites *Scott v. Harris*, 550 U.S. 372, 380 (2007), for the proposition that a party cannot generate a genuine issue of material fact by advancing claims contradicted by an unrefuted video recording.

In that case, the United States Supreme Court considered a motion for summary judgment under Federal Rule of Civil Procedure 56(c).  *Scott*, 550 U.S. at 380.  *Scott* involved an excessive-force claim lodged by a motorist fleeing law enforcement.  *Id.* at 374.  The motorist asserted the deputy rammed his car even though the road was clear of other traffic.  *Id.* at 379.  The majority disagreed, concluding, "The videotape [told] quite a different story."  *Id.*  In the Court's words: "Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury."  *Id.* at 380.  The majority chastised the circuit court for relying on

a "visual fiction" when "it should have viewed the facts in the light depicted by the videotape." *Id.* at 380–81. In finding summary judgment was proper, the Court reasoned, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

Aragon Tap urges, "To the extent they don't already do so, the Iowa courts should follow the United States Supreme Court's guidance and rationale with respect to unrefuted video footage." As Aragon Tap suggests, the question addressed in *Scott*—whether the trial court may grant summary judgment based on video evidence contradicting one side's allegations—has not reached our court until now.

But other state courts have followed *Scott*. *See, e.g.*, *Ex parte City of Montgomery*, 272 So. 3d 155, 166 (Ala. 2018) ("Based on the dashboard-camera video, no reasonable juror could conclude that Shavers was acting with 'reckless disregard for the safety' of others."); *Bisson v. Wal-Mart Stores, Inc.*, 195 A.3d 707, 721 (Conn. App. Ct. 2018) ("We have reviewed the surveillance video recording and disagree with the plaintiff's contention that it depicts precisely where [employee] was looking at the time of her safety sweep in the main aisle just prior to the plaintiff's fall."); *Niva v. McCardell*, No. 296847, 2011 WL 1519363, at *5 (Mich. Ct. App. Apr. 21, 2011) ("[W]e conclude that Mr. Niva's story is so utterly discredited by the home surveillance recording that no reasonable jury could have believed him."); *May v. Cal. Hotel & Casino*, No. 68419, 2016 WL 7409693, at *1 (Nev. Ct. App. Dec. 21, 2016) ("Given the discrepancy between May's allegations

and the surveillance video, the district court could not simply adopt May's account of the incident."); *Sellers v. Township of Abington*, 106 A.3d 679, 690 (Pa. 2014) ("Appellants claim that Officer Howley was driving in the opposite direction as Simons . . . . The in-car camera recording, however, blatantly contradicts this assertion, revealing that Officer Howley was driving behind Simons, travelling in the same direction, when he initiated the pursuit, and therefore summary judgment was appropriate."); *but see Lopez v. Wilsonart, LLC*, No. 5D18-2907, 2019 WL 3047709, at *2 (Fla. Dist. Ct. App. July 12, 2019) (finding trial court erred in applying *Scott's* holding to a summary judgment proceeding under Florida's more restrictive standard).

Unlike Florida, Iowa's summary-judgment standard under Rule 1.981 "is based on Rule 56 of the Federal Rules of Civil Procedure and there are only minor differences between that rule and ours." *Bauer v. Stern Fin. Co.*, 169 N.W.2d 850, 853 (Iowa 1969); *cf. Lopez*, 2019 WL 3047709, at *2. Absent state interpretive guidance on the role of video evidence contradicting witness accounts, when our rule is substantially similar to the federal counterpart, we can rely on federal interpretations. *State ex. rel. Iowa Dep't. of Human Servs. v. Duckert*, 465 N.W.2d 871, 873 (Iowa 1991). So we resolve Brosnan's summary-judgment question using the framework from *Scott*.

Here, like in *Scott*, a videotape captured the events in question. *See* 550 U.S. at 379. The footage from Aragon Tap depicts the definitive record of how Brosnan fell. Herrig's affidavit verifies the security tape could not be altered. That video gives the court the most accurate glimpse of what occurred inside the tavern on July 30, 2014. Even so, Brosnan insists she is not the person depicted in the

video and stands by her claim that she fell backward before she suffered her injuries. The district court properly declined to engage in a "visible fiction" by relying on these arguments when the video evidence so clearly contradicted them.[5]

By her own admission, Brosnan was dressed like the person seen falling in the video, including the distinction of wearing a medical boot and carrying a cane. The person depicted falls forward, not backward. Treating Brosnan's discredited story of her fall as equal to the uncontroverted depiction in the video would be engaging in the "visible fiction" the *Scott* majority cautioned against. *See Scott*, 550 U.S. at 381. Viewing the summary-judgment record "in the light depicted by the videotape," the district court did not impermissibly weigh the evidence. No reasonable jury could find Brosnan's recollection of events was credible in the light of the video of the incident.[6]

---

[5] The video evidence here was more definitive than the footage in *Scott*. In *Scott*, the dissent accused the majority of failing to view the video "dispassionately" and opined, "[T]he tape actually confirms, rather than contradicts, the lower courts' appraisal of the factual questions at issue. More importantly, it surely does not provide a principled basis for depriving the respondent of his right to have a jury evaluate the question whether the police officers' decision to use deadly force to bring the chase to an end was reasonable. . . . This is hardly the stuff of Hollywood." *Scott*, 550 U.S. at 390 n.1, 390–92 (Stevens, J., dissenting).

[6] Brosnan additionally argues Sanders's report "provided some support for her assertion that the bar stool was faulty." Aragon counters that because Sanders did not show up for his deposition, so his written report would not have been admitted at trial. *See* Iowa Rs. Civ. P. 1.508(3), 1.517(3). And Aragon further argues the district court may only consider facts as would be admissible in evidence when deciding a summary judgment motion. *See* Iowa R. Civ. P. 1.981(5); *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96 (Iowa 2012).

Even assuming Sanders's report would be admissible, it does not provide insight into causation, nor does it resolve the discrepancy between Brosnan's account of events and the video footage. In fact, the district court assumed the report's conclusion—namely, that the barstools were in poor shape—in arriving at its conclusion no fact question existed. Accordingly, the barstool evaluation report does not alter our analysis.

### B. Falling Direction as a Material Fact

In the alternative, Brosnan argues, even if we accept the video as a definitive record of events, Aragon Tap is still not entitled to summary judgment because the direction of her fall is not a material fact. We disagree. The direction of her fall is a key circumstance driving the causation element of the suit. *See Linn*, 903 N.W.2d at 342 ("A fact is material when its determination might affect the outcome of a suit."). Her lawsuit alleged the back of the barstool "suddenly gave out . . . causing [her] to fall to the floor." In her deposition, she staked her position on the direction of the fall: "I have consistently testified that I fell and that I fell off the back of the bar stool."

In granting summary judgment to Aragon Tap, the district court emphasized the nexus between the direction of the fall and the bar's liability:

> [T]he video shows the barstool did not come apart at the back rest nor did it fall over. This is because she fell forward and not backward and in doing so, the barstool is actually pushed away from her as a result of the movement of her body. The haggard condition of the barstools is an improbable connection, a remote issue and not a proximate cause of any injuries suffered by Plaintiff.

As we concluded above, we find no error in the district court's determination.

## IV. Conclusion

To recap, the court permissibly pinned its judgment on video footage directly refuting Brosnan's version of events. After viewing that video, no reasonable juror could have found Brosnan accurately described her fall. The video contradicted her claim Aragon Tap's poor maintenance of the barstool caused her to fall backward and injure herself. And finally, the direction of the fall was material to the negligence action. Thus, the court properly found no genuine issues of

material fact and, as a matter of law, Aragon Tap was entitled to summary judgment.

**AFFIRMED.**